361 A.2d 282
**COMMONWEALTH of Pennsylvania**

v.

**James Preston KICHLINE, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 20, 1975.

Decided July 6, 1976.

268

270

Donald F. Spang, Brett A. Huckabee, Reading, for appellant.

Grant E. Wesner, Deputy Dist. Atty., Reading, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

On December 7, 1973, appellant James Preston Kichline was convicted after a jury trial of murder in the

first degree. The trial court denied post-verdict motions and imposed judgment of sentence of life imprisonment. On this direct appeal,[1] appellant contends that he is entitled to a new trial because of numerous pretrial and trial errors. Finding none of his arguments persuasive, we affirm the judgment of sentence.

## I. SUFFICIENCY OF THE EVIDENCE

■ This Court is required to review the sufficiency of the evidence to sustain a conviction in every case of murder in the first degree. Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187 (1964). We have often stated the test to be applied:

> "[W]hether, viewing all of the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt."

*Commonwealth v. Bastone,* 466 Pa. 548, 552, 353 A.2d 827, 829 (1976); see *Commonwealth v. Green,* 464 Pa. 557, 565, 347 A.2d 682, 686 (1975); *Commonwealth v. McFadden,* 448 Pa. 277, 281, 292 A.2d 324, 326 (1972).

In the late afternoon of April 22, 1973, a gas station in Lehigh County was robbed and the gas station attendant abducted. Police discovered spent cartridges at the scene of the robbery. The following day, the attendant's body was found covered with a blanket in a deserted area of Berks County. Medical examiners established that gunshot wounds were the cause of death. Appellant surrendered to police on April 25, 1973, and confessed to the robbery-murder. He stated that he had driven his father's car and had used a blanket found in the trunk of the car to cover the body, that he shot the victim shortly

1. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673 art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1975).

after abducting him, and that he had used his brother's gun, which he later hid in a hotel room. Police verified the details of appellant's confession and located the weapon. A ballistics expert testified that both the fatal bullets and the cartridges found at the gas station had been fired from the gun found in the hotel room.

The statute applicable to this case defines murder in the first degree as follows:

> "All murder which shall be perpetrated by means of . . . willful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempting to perpetrate any . . . robbery . . . shall be murder in the first degree."

Act of June 24, 1939, P.L. 872, § 701, as amended (formerly codified as 18 P.S. § 4701.[2] The evidence here is sufficient for the jury to conclude beyond a reasonable doubt that appellant killed decedent in the perpetration of a robbery.

Appellant argues that the facts of this case preclude a conviction of felony-murder because, according to appellant, he had already completed the robbery and fled the scene of the crime before the homicide was committed. The trial judge refused appellant's point for charge which incorporated this theory.

■■ In order for the felony-murder rule to apply, there must be " 'such actual legal relationship between the killing and the crime committed or attempted, that the killing can be said to have occurred as a part of the perpetration of the crime, or in furtherance of an attempt or purpose to commit it.' " *Commonwealth v. Kelly*, 333 Pa. 280, 285–86, 4 A.2d 805, 807 (1939) (quoting 13 R.C.L. § 148); accord *Commonwealth v. Robinson*, 450 Pa. 145, 147–48, 299 A.2d 220, 222 (1973). Thus, appellant may be found guilty of felony-murder if there

2. The statute has since been amended and included in the new Crimes Code. 18 Pa.C.S. § 2502 (Supp.1975).

was "no break in the chain of events" between the killing and the robbery such that the homicide "had an ultimate relation [to] and close connection with the felony." *Commonwealth v. Carey*, 368 Pa. 157, 162, 82 A.2d 240, 242 (1951). Accord *Commonwealth v. Alston*, —— Pa. ——, 317 A.2d 229, 232 (1974); *Commonwealth v. Kelly*, supra at 280, 4 A.2d at 805. As Professor Perkins stated:

> "Under the prevailing view if the killing resulted from the perpetration of the design it falls within the rule even if the felony itself had been completed before the fatal blow was struck."

R. Perkins, Criminal Law at 42 (2d ed. 1969); see W. LaFave and A. Scott, Criminal Law § 71 (1972).

 The evidence presented here was sufficient for the jury to find that there was no break in the chain of events and that the homicide resulted from and was closely connected to appellant's design to perpetrate a robbery. Therefore, the trial court properly refused appellant's point for charge, and appellant could have been found guilty of murder in the first degree based upon a felony-murder theory.

## II. CHANGE OF VENUE

Appellant, relying on *Commonwealth v. Pierce*, 451 Pa. 190, 303 A.2d 209, cert. denied 414 U.S. 878, 94 S.Ct. 164, 38 L.Ed.2d 124 (1973), claims that he was denied a fair trial because of prejudicial pretrial publicity. We do not agree.

 Dispositions of motions for a change of venue are within the sound discretion of the trial court. *Commonwealth v. Powell*, 459 Pa. 253, 258, 328 A.2d 507, 510 (1974); *Commonwealth v. Martinolich*, 456 Pa. 136, 141, 318 A.2d 680, 683, appeal dismissed, 419 U.S. 1065, 95 S.Ct. 651, 42 L.Ed.2d 661 (1974); *Commonwealth v. Swanson*, 432 Pa. 293, 296, 248 A.2d 12, 14 (1968), cert. denied, 394 U.S. 949, 89 S.Ct. 1287, 22 L.Ed.2d 483

(1969). In reviewing the trial court's decision, the only legitimate inquiry is whether any juror formed a fixed opinion of appellant's guilt or innocence as a result of the pretrial publicity. *Commonwealth v. Powell,* supra; *Commonwealth v. Hoss,* 445 Pa. 98, 107, 283 A.2d 58, 64 (1971); *Commonwealth v. Swanson,* supra. In some cases the publicity in the community may be so pervasive and inflammatory that this Court will assume that the jury was biased. *Commonwealth v. Pierce,* supra; see ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press § 3.2(c) (1966). In any case in which a juror was found or assumed to be prejudiced, the trial court would abuse its discretion if it denied a motion for a change of venue. *Commonwealth v. Pierce,* supra; see *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L. Ed.2d 663 (1963).

Here, the trial court stated that "the jury selected was completely fair and unbiased and was properly selected." The record fully supports the trial court's holding. Appellant produced numerous newspaper articles. However, only eight articles published in the Reading Times and the Reading Eagle were circulated in Berks County, where the trial took place. Articles relied on by appellant published in Northampton County newspapers, the county where appellant had been released from prison on a furlough program, and in Lehigh County newspapers, where the alleged robbery took place, had only a limited circulation in Berks County and could not have had a prejudicial effect on a Berks County jury.[3]

**3.** This finding at the change of venue hearing is fully supported in the voir dire record. No prospective juror either subscribed to the non-Berks County newspaper or was aware of any publicity contained in them.

Appellant also relies on television and radio reporting. However, the trial court found that the broadcasts were neither extensive nor prejudicial, and appellant does not refer us to anything in the record which contradicts this holding.

The trial court found that the Reading Times and Reading Eagle articles were restrained in their coverage of appellant's case: "[W]e cannot find that any of the items published were inflammatory in nature." Most of the coverage concerned the ongoing police investigation and the surrender of appellant to police. Although the reporting was primarily factual in nature, "unidentified" officials gave appellant's confession to reporters, and it was relied on in three articles to describe appellant's movements during and after the crime. Appellant's criminal record and his participation in the prison furlough program were also referred to in several newspaper articles. In addition, a policeman, the president of the local chapter of the fraternal order of police, who was not involved in the investigation of this case, was quoted in one article, criticizing appellant's furlough program.

█ Although pretrial publicity of an alleged confession and of prior criminal offenses is prejudicial to a defendant, we cannot conclude that, in the circumstances of this case, such publicity was so "inherently prejudicial" as to deny appellant a fair trial. Compare *Sheppard v. Maxwell*, supra; *Rideau v. Louisiana*, supra; *Commonwealth v. Pierce*, supra.[4] The articles were published six

---

4. In *Pierce*, this Court held that the publicity was so inflammatory as to be "inherently prejudicial" and required a reversal of appellant's conviction. However, in that case, the publicity included police reports on television and radio and in the local newspapers that appellant had confessed, that he was the "triggerman" and that he had been "crying and weeping." Another story was given by police which described defendant's criminal record. Other publicity included a staged reenactment of the crime which included a picture of defendant and police at the scene of the crime, and highly inflammatory statements released by the district attorney's office concerning the safety of prosecution witnesses. We summarized these and other articles (not specifically recited in the opinion) as "emotionally charged and inflammatory," and stated that the pretrial coverage was extensive. We compared the prejudicial effect of the articles to the United States Supreme Court decision in *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), and relied on *Sheppard*

months before trial, and the publicity had ceased after appellant's preliminary arraignment. Because the publicity in Berks County was neither inflammatory nor extensive, this lengthy delay "was [sufficient] time for the effect of these news stories to fade from the minds of prospective jurors." *Commonwealth v. Powell*, supra, 459 Pa. at 260, 328 A.2d at 511 (one year delay); see *Commonwealth v. Nahodil*, 462 Pa. 313, 341 A.2d 91 (1975) (six month delay); *Commonwealth v. Stoltzfus*, 462 Pa. 55, 337 A.2d 873 (1975) (one year delay); *Commonwealth v. Douglas*, 461 Pa. 749, 337 A.2d 860 (1975) (eleven month delay); *Commonwealth v. Dobrolenski*, 460 Pa. 630, 334 A.2d 268 (1975) (five month delay); *Commonwealth v. Hoss*, supra (five month delay).

Appellant argues that these articles disclosed violations of the standards enunciated in *Pierce*[5] and that these violations require a grant of a new trial. He supports his claim by arguing that his confession and his criminal record must have been given to the media by the police and by relying on the publicized criticism of the furlough program by one police officer.

Although there may have been violations of the *Pierce* guidelines, this showing alone does not give appel-

v. *Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). The publicity in this case falls far short of the "inherently prejudicial" publicity in any of these cases.

5. "[W]e rule that in this Commonwealth policemen and members of the staffs of the office of District Attorneys shall not release to the news media: (a) the existence or contents of any statement or confession given by the accused, or his refusal to give a statement or to take tests; (b) prior criminal records of the accused including arrests and convictions; (c) any inflammatory statements as to the merits of the case, or the character of the accused; (d) the possibility of a plea of guilty; (e) nor shall the authorities deliberately pose the accused for photographs which connect him with the scene of the crime."

451 Pa. at 200, 303 A.2d at 215. See Pa.Code of Professional Responsibility, Disciplinary Rule 7–107; ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press, §§ 1.1, 2.1 (1968).

lant an automatic right to a change of venue. As we stated in *Nahodil*:

> "In *Pierce,* we condemned and proscribed the practice of police and law enforcement agents in releasing to the news media the existence and contents of statements or confessions given by those accused of crime. However, a violation of our ruling in *Pierce* does not necessarily mandate a new trial. It must also appear that the news accounts were so 'inherently prejudicial' that the possibility of a fair trial was questionable."

462 Pa. at 306, 341 A.2d at 93.[6]

*Nahodil* is similar to this case. There, the police disclosed to the news media that the defendant had confessed. However, we found that the media coverage was not extensive and that there had been no further adverse publicity for the six months prior to trial. We held that this was sufficient time for the stories to fade from the minds of prospective jurors and declined to hold that the disclosure of the confession was "inherently prejudicial." Accord *Commonwealth v. Dobrolenski,* supra (police disclosed defendant's confession and criminal record); *Commonwealth v. Douglas,* supra (police disclosed defendant's criminal record).

Here, as in *Nahodil,* the publicity was not extensive and not highly inflammatory, there was a long period of delay between the *Pierce* violations and trial and the court found that an impartial jury could be empanelled.[7]

---

6. Our holding in *Pierce* does not suggest a contrary result. We stated:

> "We hold that anything short of compliance with these standards *can* operate to deprive an accused of due process of law, as this type of material did in the instant case." (Emphasis added.)

451 Pa. at 200, 303 A.2d at 215.

7. We note that appellant does not claim any prejudicial error at the voir dire hearing in support of his change of venue motion. Indeed, the record shows that although eleven jurors stated they remembered that the case had been publicized, none remembered any details of the publicity.

Appellant's motion for a change of venue was therefore properly denied.

## III. ADMISSIBILITY

Appellant's next contention is that the suppression court erred in denying his motion to suppress three confessions. Specifically, he alleges that he was so fatigued, nervous and upset during the interrogations that his confession was involuntary and his waiver of *Miranda* rights was invalid as a matter of law.

Appellant voluntarily surrendered to Quakertown police at 5:00 a. m., April 25, 1973. At 5:35 a. m. police read him his *Miranda* rights; appellant signed a waiver card and stated his desire to get his confession "over with." Interrogation began at approximately 6:00 a. m., and appellant's confession was transcribed in longhand by one of the interrogating officers. At 7:00 a. m. appellant signed both a second card waiving his *Miranda* rights and the handwritten confession. The confession was typed between 7:00 a. m. and 8:45 a. m., and appellant read, made minor corrections to, and signed the typed version at 8:45 a. m.

After police obtained these two confessions, they transported appellant to Lehigh County to be arraigned on the robbery charge.[8] The record is silent concerning events after arraignment until 4:05 p. m. that afternoon, when appellant was transported to the Berks County district attorney's office. He was read his *Miranda* rights, which he again waived in writing, and a second interrogation session began. At 4:45 p. m. appellant signed a longer version of his original confession, which contained many new details of his movements before and after the crime.

8. Appellant does not claim a violation of his right to prompt arraignment. See Pa.R.Crim.P. 130; *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972); cf. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

Although there is no single litmus-paper test for determining the voluntariness of a confession, it must be established that the decision to speak was a product of a free and unconstrained choice of its maker. See *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *Commonwealth v. Ritter*, 462 Pa. 214, 340 A.2d 433 (1975); *Commonwealth v. Alston*, 456 Pa. 128, 317 A.2d 241 (1974); *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973); *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968). All attending circumstances surrounding the confession must be considered in this determination. These include: the duration and methods of the interrogation; the length of delay between arrest and arraignment; the conditions of detainment; the attitudes of the police toward defendant; defendant's physical and psychological state; and all other conditions present which may serve to drain one's power of resistance to suggestion or to undermine one's self-determination. See *Culombe v. Connecticut*, supra 367 U.S. at 602, 81 S.Ct. at 1879; *Commonwealth v. Boyd*, 461 Pa. 17, 30–32, 334 A.2d 610, 617–18 (1975); *Commonwealth v. Purvis*, 458 Pa. 359, 364, 326 A.2d 369, 371 (1974); *Commonwealth v. Simms*, 455 Pa. 599, 602–03, 317 A.2d 265, 267 (1974).

Moreover, when, as here, the question of voluntariness involves degrees of psychological coercion, "the most careful attention will be afforded to any facts, circumstances, or events tending to overbear an accused's will." *Commonwealth v. Simms*, supra at 603, 317 A.2d at 267; see *Commonwealth v. Goodwin*, 460 Pa. 516, 521, 333 A.2d 892, 895 (1975); *Commonwealth ex rel. Butler v. Rundle*, supra 429 Pa. at 149, 239 A.2d at 430 (1968). Defendant may be so emotionally and psychologically distraught or unbalanced that this factor alone may make his confession involuntary. *Commonwealth v. Ritter*, supra.

Appellant also challenges the validity of his waiver of constitutional rights. In reviewing this claim, this Court must determine "whether, considering all the attending circumstances, . . . the accused understood his rights and knowingly, intelligently, and voluntarily waived them." *Commonwealth v. Klinger*, 461 Pa. 606, 612, 337 A.2d 569, 571 (1975); see *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966); *Commonwealth v. Bullard*, 465 Pa. 341, 346, 350 A.2d 797, 799 (1976). Thus, the record must show not only that adequate warnings were given but also that the defendant understood the import of those warnings. See *Miranda v. Arizona*, supra; *Commonwealth v. Cobbs*, 452 Pa. 397, 403, 305 A.2d 25, 28 (1973); *Commonwealth v. Goldsmith*, 438 Pa. 83, 85, 263 A.2d 322, 323 (1970).

The suppression court, which hears and evaluates the testimony, is required to make findings of fact and conclusions of law. Pa.R.Crim.P. 323(i); *Commonwealth v. Jackson*, 464 Pa. 292, 346 A.2d 746 (1975). The court must determine whether the Commonwealth has established by a preponderance of the evidence that the confession was voluntary and that the waiver of constitutional rights was knowing and intelligent. See *Commonwealth v. Bullard*, supra 465 Pa. at 346, 350 A.2d at 799; *Commonwealth v. Goodwin*, supra 460 Pa. at 521, 333 A.2d at 895; *Commonwealth v. Jones*, 457 Pa. 423, 430, 322 A.2d 119, 124 (1974); *Commonwealth ex rel. Butler v. Rundle*, supra. Our responsibility on review is "to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Goodwin*, supra 460 Pa. at 521, 333 A.2d at 895; see *Commonwealth v. Bundy*, 458 Pa. 240, 328 A.2d 517 (1974). In making this determination, this Court will consider only the evidence of the prosecution's witnesses and so much of the evidence for

the defense as, fairly read in the context of the record as a whole, remains uncontradicted. See *Culombe v. Connecticut*, supra 367 U.S. at 604, 81 S.Ct. at 1878; *Commonwealth v. Goodwin*, supra 460 Pa. at 521, 333 A.2d at 895; *Commonwealth ex rel. Butler v. Rundle*, supra 429 Pa. at 149–50, 239 A.2d at 430.

Applying these standards to appellant's case, we conclude that his confessions were voluntary and his waiver knowing and intelligent. Although it is uncontradicted that he was tired and nervous, felt ill and had been drinking the night before, these factors alone are insufficient to negate findings of a voluntary confession and a valid waiver of constitutional rights. See *Commonwealth v. Smith*, 447 Pa. 457, 291 A.2d 103 (1972); *Commonwealth v. Goodwin*, supra. There is no evidence in this record suggesting that the police exploited appellant's emotional state. Appellant voluntarily surrendered and indicated a desire to confess immediately. Police testified that appellant fully understood his rights, that he was not coerced or physically restrained, that he was attentive, that he did not appear intoxicated and that he did not have alcohol on his breath. He read his confessions, made minor corrections, and restated his desire to get his confession "over with" several times during the course of the day. Thus, this record supports the suppression court's holding that the Commonwealth met its burden of proving the voluntariness of appellant's confessions and the validity of appellant's waiver of constitutional rights.

Appellant argues that his confessions were not voluntary and his waiver of constitutional rights not knowing and intelligent because, near the end of the last interrogation session, he stated his need for rest and his desire to end the session. However, the record shows that he changed his mind and stated his desire to finish his confession at that time. He does not argue that his

request was an assertion of his constitutional right to remain silent. See *Miranda v. Arizona,* supra 384 U.S. at 473–75, 86 S.Ct. at 1627–28. Nor does the record support such a contention. Appellant, in response to questions by the suppression judge, made clear that he never changed his decision to confess:

"THE COURT: You never asked them to stop and say you won't answer questions anymore? You never said that?

THE WITNESS: I never said that.

THE COURT: So you answered all of their questions without at any time refusing to continue to answer questioning?

THE WITNESS: Yes, I went through with it."

Appellant's mere statement that he was fatigued does not establish that appellant's need for rest was so acute that his confessions were involuntary and his waiver unknowing and unintelligent.

The suppression court's conclusion that the Commonwealth met its heavy burden of proving the voluntariness of appellant's confession and the validity of his waiver of his constitutional rights is fully supported in this record.

## IV. INTOXICATION DEFENSE

Appellant, relying on *Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972), argues that the trial court erred in holding inadmissible certain expert psychiatric testimony. The psychiatrist would have testified that, because of appellant's alcoholism, he could not have formed the specific intent to kill necessary for a conviction of murder in the first degree [9] if he had been intoxi-

**9.** The specific intent requirement for murder in the first degree is satisfied if the killing is "willful, deliberate, and premeditated." 18 Pa.C.S. § 2502(d) (Supp.1975).

cated at the time of the homicide.[10] The trial court held that the psychiatrist could not testify unless appellant presented evidence of actual intoxication.

Until recently, psychiatric testimony, because of its supposed unreliability, was disfavored in Pennsylvania unless offered to show that a defendant was criminally insane under the M'Naghten rule. See, e. g., *Commonwealth v. Tomlinson*, 446 Pa. 241, 284 A.2d 687 (1971); *Commonwealth v. Ahearn*, 421 Pa. 311, 218 A.2d 561 (1966).

In *McCusker*, however, this Court held psychiatric testimony admissible to show that a defendant charged with murder acted in the heat of passion. We stated that our holding was "but a belated recognition of the tremendous advancements made in the field of psychiatry during the last several decades." 448 Pa. at 385, 292 A.2d at 287. We noted that psychiatric evidence comes from a "recognized and important branch of modern medicine" and that the science of psychiatry "is capable of offering quality expert guidance" to the jury. Id. at 387, 392, 292 A.2d at 289, 291. The effect of *McCusker* was to put psychiatric testimony on a footing with other evidence. The threshold issue, therefore, in determining the admissibility of such evidence, was whether the proffered testimony was sufficiently relevant and probative under traditional evidentiary rules. Because we found that these stan-

10. The record is ambiguous concerning appellant's offer of proof at trial. Appellant stated that the doctor would testify concerning appellant's "disease of alcohol" and would testify that he "was so suffering at the time of April 22." Appellant conceded that the doctor had no knowledge whether appellant "had anything to drink on that occasion." The court stated that testimony concerning alcoholism would be relevant only if appellant had been intoxicated. Appellant did not argue that the doctor's testimony would be relevant regardless whether appellant was intoxicated at the time of the homicide despite having an opportunity to do so. Rather, he argued that the record contained sufficient evidence of intoxication to make it a controverted issue in the case. Moreover, on this appeal, he titles his argument: "Psychiatric testimony is admissible concerning the condition of the appellant when under the influence of alcohol . . . ."

dards were satisfied in *McCusker*, we held that the trial court's holding that the psychiatric evidence was inadmissible was prejudicial error:

"[A]ny evidence—lay or psychiatric—pertinent to [the defense of heat of passion] should be admissible. The principal vice of rejecting psychiatric testimony, as the trial court did here, is that it excludes from the consideration of the factfinders evidence of probative value vital to a determination of defendant's state of mind."

448 Pa. at 391, 292 A.2d at 290–91.

Applying the *McCusker* analysis to the facts of this case, we must determine whether the testimony was relevant and probative to an issue in the case. This requires a two-step analysis:

"It must be determined first if the inference sought to be raised by the evidence bears upon a matter in issue in the case and, second, whether the evidence 'renders the desired inference more probable than it would be without evidence.' "

*Commonwealth v. Stewart*, 461 Pa. 274, 278, 336 A.2d 282, 284 (1975) (quoting McCormick, Evidence § 185 (2d ed. E. Cleary (1972)); cf. *Commonwealth v. Hickman*, 453 Pa. 427, 309 A.2d 564 (1973); *Commonwealth v. McCusker*, supra.

Evidence of defendant's intoxication is relevant in a first degree murder case because it may show that he did not have the requisite specific intent to kill. *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975); *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974); *Commonwealth v. Ingram*, 440 Pa. 239, 270 A. 2d 190 (1970). Appellant's psychiatrist would have testified that, because of appellant's alcoholism, he could not have formed that intent if he had been intoxicated. Thus, if appellant had presented evidence that he had

been intoxicated at the time of the homicide, the psychiatric testimony may have been admissible because it may have been relevant in determining appellant's actual state of mind. Cf. *Commonwealth v. McCusker,* supra; *Commonwealth v. Stewart,* supra.

 However, the record is devoid of any evidence that appellant was in fact intoxicated at the time of the homicide.[11] Thus, that issue was not before the jury. See *Commonwealth v. Rose,* supra. The psychiatric testimony concerned appellant's state of mind while intoxicated and its relevance was conditional on some evidence of intoxication. Because appellant was unable to establish the factual foundation for his proffered evidence, it does not "bear upon a matter in issue in the case," and the trial court properly held that it was inadmissible.

11. The only testimony in the record of appellant's intoxication came on direct examination of one defense witness concerning an incident shortly before the time of the robbery:

"Q. Did you have an opportunity to observe anything with reference to [appellant's] breath?

A. He smelled, he had a little drink in him.

Q. What do you mean by drink, you mean alcoholic beverages?

A. Yes.

. . . . . . . . . .

Q. Did you notice anything with respect to his conduct?

A. No, he didn't act out of line or nothing, no.

The Court: He didn't act out of line?

The Witness: No he didn't."

As the trial court correctly concluded:

"[T]here is no evidence whatsoever to indicate that at the time of the alleged offense the defendant was under the influence of alcohol. In fact, even the defendant's evidence is to the contrary, that within a period of not more than an hour from the time of the alleged offense, and within an area of . . . not more than one block from the site of the alleged offense, the defendant, while he may have had some alcohol, was not in any way adversely affected by it, and the odor of alcohol upon one's breath is not sufficient to prove intoxication."

See *Commonwealth v. Rose,* 457 Pa. 380, 389–390, 321 A.2d 880, 884 (1974).

■ Our holding is buttressed by considering appellant's final argument. He contends that the trial court erred in refusing to instruct the jury concerning his alleged intoxication. However, before the court must instruct the jury on an intoxication defense, there must be evidence in the record to bring that issue into the case. *Commonwealth v. Rose,* supra 457 Pa. at 389–390, 321 A.2d at 884. Here, appellant failed to present sufficient evidence, and the trial court correctly refused the proposed instruction. Thus, since appellant was not entitled to an intoxication instruction, the psychiatrist's testimony, which assumed evidence of intoxication, would have been irrelevant to the jury's deliberation.

Judgment of sentence affirmed.

JONES, C. J., did not participate in the consideration or decision of this case.

NIX, J., concurs in the result.

EAGEN, J., filed a dissenting opinion.

EAGEN, Justice (dissenting).

While I have great respect for the wisdom and judgment of the distinguished jurist who presided in the instant trial proceedings, I am convinced it was an abuse of discretion to deny a change of venue.

In my view, *Commonwealth v. Pierce,* 451 Pa. 190, 303 A.2d 209 (1973), is controlling. That the petrial publicity in this case was "inherently prejudicial" and jeopardized Kichline's right to a fair trial to me is beyond question. Under such circumstances, whether or not any of the jurors who decided the case had any prior opinions as to the accused's guilt or innocence is irrelevant.

I would award a new trial.