## Commonwealth v. Liddick

*Donald L. Reihart, District Attorney,* for Commonwealth.

*William C. Costopoulos,* for defendant.

ERB, *J.,* June 17, 1977—Counsel for defendant has applied for a change of venue alleging that defendant is unable to secure a fair and impartial jury to determine his guilt in York County. The basis for his claim is the publicity given to the case, both before and after the initial trial and since the awarding of a new trial by the Supreme Court, by the news media in York County, which is alleged to be of extraordinary volume and of a prejudicial nature.

If the re-trial of a criminal matter, after the granting of a new trial, is reported in the news media, in and of itself, were sufficient to deny defendant a fair trial, then we would automatically remove every case where this occurred to another jurisdiction for the new trial. Quite understandably, there is no decision which requires this extreme procedure. We view it as an additional ingredient to consider in examining the pre-trial publicity.

The Commonwealth has stipulated that the allegations with the attached exhibits in defendant's application, as well as one exhibit introduced at the hearing, contains all of the news articles and radio and television accounts which have appeared prior to this hearing.

Of the newspaper accounts, there were 31 articles covering the pre-investigation stage through the trial verdict in three newspapers published in York County, with the final account of the verdict of guilty on January 26, 1974. A lapse of about three and one-half years will have passed between that newspaper article and the beginning of the re-trial of the case in June.

Since that time, only six rather cursory accounts have appeared in the newspapers. One on July 25, 1975, explaining that the Court of Common Pleas granted a new trial; two in separate papers in March of 1977, indicating that the Supreme Court upheld the lower court's ruling; and three in separate papers in the week of February 6, 1977, indicating the hearings on various pre-trial petitions filed by defendant.

In addition, there were reports, unspecified as to date or context, on one UHF television station in York County, and on four UHF television stations

located out of York County, whose broadcasts can be seen in York County, and on several radio stations in York County and two radio stations located out of York County, whose broadcasts can be heard in York County.

Except for the bare news media accounts, defendant has introduced no evidence which would demonstrate prejudice.

Defendant cites Commonwealth v. Pierce, 451 Pa. 190, 303 A.2d 209 (1973), as authority for the granting of his request. In that case, unlike the present case, the victims were a seminarian and a practicing attorney in the county where the trial was first held. In addition, the police reported to the news media the record of defendant, which was published. The media also published the police report that defendant had confessed, with a large picture of defendant flanked by police officers which was described as defendant indicating where the victim had fallen.

Defendant also cites Rideau v. Louisiana, 373 U. S. 723, 83 S. C. 1417, 10 L. Ed. 2d 663 (1963), in support of his request. In this case, also, a police interview of defendant in which he confessed to the offense was filmed and broadcast on television in the community in which defendant was tried.

The Supreme Court held in Commonwealth v. Hoss, 469 Pa. 195, 201, 36 A.2d 1335 (1976): "There have, however, been certain circumstances where courts have relieved the accused of the responsibility of establishing a nexus between the pretrial publicity and actual jury prejudice and presumed the existence of prejudice. This has occurred in two distinct situations. First, where the pretrial media coverage is so extensive, so sustained, so pervasive and includes highly inflam-

matory and prejudicial information (rather than a factual account of the events reported) courts have determined that prejudice may be presumed. . . The other instance where courts have presumed the existence of prejudice has been where it was determined that in addition to inflammatory pretrial publicity, the dignity and the objectivity of the court proceedings themselves have been disrupted by the publicity." See also Commonwealth v. Kichline, 468 Pa. 265, 361 A.2d 282 (1976).

None of the media accounts in the present case even approaches the factors present in the cases cited by defendant. We have read all of the accounts. In the main they are short, factual and without editorial comment. Few appeared on the first page of the newspaper, and those at the time of the original trial in January of 1976. While the factual details of the case are unusual and may arouse more than a passing interest, we do not find the media's reporting of the proceedings of a sensitive or emotion arousing nature so as to call particular attention to this case from that of any other serious offense. Since this trial is being held a substantial time after the first trial in which defendant was convicted, it is unlikely that the media accounts of that trial are any longer remembered by the vast majority of citizens in York County.

Also, since both the victim and defendant were not residents of York County, the likelihood of community interest in the offense is minimal.

If it were not for a recent development with regard to publicity surrounding defendant's counsel, we would have concluded that if the trial judge exercised informed care in the jury selection process the bulk of the pre-trial news media accounts which we have discussed are sufficiently

remote in time and those more recent in time are not so inflammatory, sensational or intense as to prevent the selection of an uncontaminated and fair jury in York County.

Defendant, however, has filed a supplemental application requesting a change in venue. This request is generated by an unusual development, which, while not involved with publicity surrounding the charges against defendant, seriously effects the selection of an impartial jury for this trial in York County.

On Sunday, June 12, 1977, the Harrisburg Patriot News, which has a special section covering York County and whose Sunday edition has a broad circulation in this county, carried with banner headlines the arrest of William Costopoulos, Esq., counsel for defendant. The article carried in detail the fact that the attorney had been charged with three counts of criminal solicitation to commit perjury, three counts of obstruction of the administration of law and other governmental functions, two counts of hindering apprehension and prosecution, and one count of conspiracy to commit perjury in connection with the alibi witnesses who testified at the trial of a defendant in Perry County, Pennsylvania, charged with homicide in the death of his wife, who was acquitted by the jury.

The arrest and attendant circumstances created sufficient general interest that a York County newspaper, and other newspapers circulated in the county, television and radio stations seen and heard in York County carried the story. The material has been sufficiently set forth in defendant's exhibits to his application that we need not repeat them in detail here.

While there was no mention in the news reports of the fact attorney Costopoulos is representing the present defendant in the forthcoming trial, scheduled for trial on June 24, the similarity between the two cases is unmistakable. Counsel's name and appearance are sufficiently distinctive, and the nature of the charge involving an attorney are sufficiently unique to create sufficient interest in the reader to read and listen to the news reports and to remember that information at the time of the trial.

Where potentially prejudicial publicity with regard to a defendant is encountered, the speculative extent to which prospective jurors may have been contaminated is abated by the ability to screen out those jurors so prejudiced by the careful conducting of the jury voir dire. The matter now considered, however, does not affect defendant directly, and therefore, does not lend itself to the discrete inquiry into a prospective juror's knowledge. Even the careful phrasing of questions may raise, in and of themselves, the very prejudice which the questions seek to discover.

We do not believe we can guard against the reasoning of a juror who suspects, either as the result of exposure to the news reports or through questions asked of him, that defense counsel is less than honorable, and who follows that premise to the conclusion that defendant's position was generated from the mind of his attorney and not from his view of the truth.

We conclude, finally, that we have a unique combination in this case, with the re-trial of a defendant previously convicted by a jury in this county of murder of the first degree, with the possibility of new evidence being introduced in the

new trial, with that defendant being represented by a recently retained attorney, who has been charged with criminal solicitation to commit perjury with regard to testimony in a similar trial, and with such information having been generously circulated in the county where the new trial is to be conducted.

We know of no previous similar case which could guide our course in such a unique situation, but we conclude that, under these circumstances, the likelihood of selection of a fair and impartial jury is sufficiently endangered that we must allow a change in venue.

It has been suggested that this problem could be solved by counsel for defendant withdrawing his representation. Defendant, however, has emphatically indicated that he wishes to be represented by his presently retained counsel. He has further indicated that he retains this preference even though the procedure in establishing a new jurisdiction in which to try his case may be time-consuming. We conclude that this desire of defendant to be represented by retained counsel of his choice outweighs the inconvenience of a change of venue. According, we enter the following

## ORDER

And now, June 17, 1977, the application of defendant for change of venue is approved, and we direct that venue in this case will be transferred from this county to a county designated by the Supreme Court of the Commonwealth of Pennsylvania in accordance with Rule 313 of the Rules of Criminal Procedure. We further direct in accordance with said rule that this opinion and order shall be certified forthwith to the Supreme Court.