## Commonwealth v. Fegley

*James J. Rosini*, for Commonwealth.
*A. Stephen Cohen*, for defendant.

RANCK, *J.*, June 30, 1978—We write this opinion in explanation of an order entered May 12, 1978, granting a change of venue to Ralph C. Fegley, defendant. The Commonwealth charges that during the morning hours of November 5, 1977, defendant traveled from Sunbury to Coal Township, Northumberland County, whereupon he allegedly entered the trailer where his estranged wife was residing and ended her life with a series of shotgun blasts. Defendant reported the death of his wife to the authorities and was arrested the day of the alleged incident.

On March 10, 1978, we accepted the entry of a plea of guilty by defendant to the general charge of homicide: Pa.R.Crim.P. 319. A hearing was held March 13, pursuant to Pa.R.Crim.P. 352(b) to determine "whether the case may constitute murder of the first degree." We concluded on the basis of the evidence presented that the case could well rise to first degree murder. See Act of March 26, 1974, P.L. 213, sec. 4, 18 C.P.S.A. §2502(a). The assignment of two other judges of equal jurisdiction was then secured to form a panel to hear all the evidence, pass on all questions of fact and law and fix the degree of guilt. Prior to the hearing scheduled by said panel, however, we received an order from the Supreme Court of Pennsylvania, per Mr. Justice Eagen, *C.J.*, dated April 21, 1978, rescinding immediately subchapter 350 of the Rules of Criminal Procedure. Since the jurisdiction of all three judge panels pursuant to subchapter 350 was revoked by said order, the instant case would be governed by the same principles applicable to all other criminal

matters, that is, all questions of fact and law and defendant's degree of guilt and sentence, if not mandatory, would be decided solely by the judge "who received the plea of guilty . . ." Pa.R.Crim.P. 1401.[1]

Defendant, however, had tendered his guilty plea believing that the degree of guilt would be set by three judges rather than one. After being informed of this change in procedure, defendant moved to withdraw his plea of guilty and substitute therefor a plea of not guilty.[2] We permitted the change of plea, since in our view it would be a fundamental denial of due process to compel a defendant to accept a procedure different from that upon which his voluntary plea was entered: Pa.R.Crim.P. 320. And see A.B.A. Minimum Standards Relating to Pleas of Guilty, §2.1(a) (Approved Draft 1968). Defendant's plea of guilty, the hearing preliminarily determining the possibility that the offense could rise to first degree murder, and the subsequent withdrawal of the guilty plea all received a considerable amount

---

1. Subsequent to the incidents recorded here, the Rules of Criminal Procedure were amended as follows:

"In cases in which the imposition of a sentence of death is not authorized, when a defendant enters a plea of guilty to a charge of murder generally, the judge before whom the plea was entered shall alone determine the degree of guilt." Pa.R.Crim.P. 319(c); para. (c) added May 22, 1978, effective July 1, 1978. (The Legal Intelligencer, June 9, 1978.)

2. We note that under the procedure prescribed by subchapter 350, a determination of murder in the first degree could only be made by unanimous vote of the three judge panel: Pa.R.Crim.P. 352(b). As a practical matter, this factor is one that certainly was considered by defendant and his counsel prior to the entry of the plea.

of attention in the press. In view of this publicity, defendant made application for a change of venue, and, as stated, we granted said change May 12, 1978.

## DISCUSSION

Defendant at hearing on the application for change of venue submitted news articles from the Sunbury Daily Item, Shamokin News-Item and Milton Standard. The news articles covering the guilty plea colloquy are particularly damaging to defendant's ability to receive a fair and impartial jury trial in Northumberland County. The Sunbury paper of March 11, 1978, carried in one-half inch print the headline: "Fegley switches his plea to guilty." In the text of the article were statements by defendant made in response to questions during the colloquy. Directly attributed to Fegley was the statement: "I meant to kill her." The account also reported the following question and response " 'Then you admit killing your wife?' Ranck asked, and again Fegley replied, 'Yes' "[3] Our judgment on March 13, 1978, that the alleged offense could constitute first degree murder was also extensively publicized.

It is clear that these news accounts, although quite factual, contained inherently prejudicial news publicity in the form of "confessions or admissions of guilt allegedly made by the accused."

3. There can be few situations that would more prejudice prospective jurors against a defendant than his voluntary admissions of guilt in open court. What must be even more baffling to the layman is a rule which permits defendant to withdraw these statements upon a change of plea to not guilty.

Com. v. Frazier, 471 Pa. 121, 131-32, 369 A. 2d 1224 (1977). Our Supreme Court has held that where news coverage includes prejudicial material of this type, the trial court must determine the "likelihood that a significant number of the prospective jurors in the county were, in fact, exposed to such publicity." 471 Pa. 121 at 131-32. Our review of the news stories shows similar content among the three newspapers which cover Northumberland County. We believe it follows from this that a significant number of the county's prospective jurors were exposed to this prejudicial coverage.

The court in Frazier further held that where it is determined that a significant number of prospective jurors have been exposed to the prejudicial coverage, a change of venue is mandated absent a "sufficiently long period of time" between the publication and the application for change of venue: 471 Pa. 121 at 132. In the instant case, there was less than one month between some of the prejudicial coverage[4] and defendant's application. Even if we were to compute the time period in terms of the first possible trial date in July, 1978, Com. v. Kichline, 468 Pa. 265, 276, 361 A. 2d 282 (1976), there would be less than three months between the publicity and trial; an insufficient time for prejudice of this magnitude to dissipate. See Com. v. Frazier, 471 Pa. 121 at 131.

---

4. All three newspapers in the county ran articles April 27, 1978, about defendant's change of plea to not guilty. Representative was a front page story in the Milton Standard, the headline of which read: "Fegley changes plea to not guilty in surprise move." This article certainly revived the earlier publicity of March, 1978.

In view of these findings, we reiterate our previous holding that defendant cannot at this time receive a fair and impartial jury trial in the County of Northumberland. Consequently, in order to protect defendant's due process rights under the Pennsylvania Constitution, art. I, sec. 9, and the Federal Constitution, U.S.C.A. Const. Amend. VI, the application for change of venue must be granted.