407 A.2d 413

**COMMONWEALTH of Pennsylvania**

v.

**John Harry BRUNO, Appellant.**

Superior Court of Pennsylvania.

Argued May 8, 1979.

Decided July 6, 1979.

Petition for Allowance of Appeal Denied Jan. 14, 1980.

Joseph P. Lynch, Norristown, for appellant.

John J. Burfete, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before CERCONE, President Judge, and ROBERTS and LIPEZ, JJ.*

ROBERTS, Judge:

On July 27, 1976, a jury convicted appellant, John Harry Bruno, of two counts of murder of the first degree. After denying post-verdict motions, the trial court sentenced appellant to two concurrent terms of life imprisonment. We affirm.

Appellant was arrested and indicted in 1966 for committing five killings. On May 13, 1966, the Commonwealth filed a petition for appointment of a Sanity Commission. Appellant filed a motion to dismiss the petition. The trial court granted the Commonwealth's petition. Appellant's appeal from the order granting the petition was quashed by the Supreme Court. See *Commonwealth v. Bruno*, 424 Pa. 96, 225 A.2d 241 (1967). The Commission found appellant incompetent to stand trial and recommended commitment before trial. Adopting the Commission's report, the trial court, on June 12, 1967, ordered appellant committed to Farview State Hospital. The trial court dismissed appellant's writ of habeas corpus challenging the order of commitment, and the Supreme Court affirmed the dismissal. See *Commonwealth v. Bruno*, 435 Pa. 200, 255 A.2d 519 (1969). The United States Supreme Court granted certiorari but, on January 12, 1971, dismissed the writ of certiorari as improvidently granted. See *Bruno v. Pennsylvania*, 400 U.S. 350, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971).

In November, 1973, appellant was certified competent to stand trial. On February 4, 1974, a jury convicted appellant of two counts of murder of the first degree. After denying post-verdict motions, the trial court sentenced appellant to two concurrent terms of life imprisonment. The Supreme

* Justice SAMUEL J. ROBERTS of the Supreme Court of Pennsylvania and Judge ABRAHAM H. LIPEZ of the Court of Common Pleas, Clinton County, Pennsylvania, are sitting by designation.

Court reversed the judgments of sentence and remanded for a new trial, holding that prejudicial publicity, against which the trial court did not employ any precautionary measures, likely reached the jury. See *Commonwealth v. Bruno*, 466 Pa. 245, 352 A.2d 40 (1976) [hereafter, *Bruno III*]. Appellant was tried again, beginning on July 22, 1976.

At his second trial, appellant raised the defense of not guilty by reason of insanity, contending that he had committed the killings for which he was charged because he thought the killings would improve his mother's condition. To support his contention, he sought to introduce evidence describing his mother's mental condition and actions, psychiatric testimony relating the effect of his mother's mental condition upon himself and medical records from the 1966 Sanity Commission report. He asserts that the court erred in excluding this evidence. We believe the court correctly excluded this evidence as irrelevant.

In Pennsylvania, the standard of insanity, called the M'Naughten test, is that an accused is legally insane if, because of mental disease, he either did not know the nature and quality of his act or did not know that it was wrong. *Commonwealth v. Hicks*, 483 Pa. 305, 396 A.2d 1183 (1979); *Commonwealth v. Bruno, III,* supra; *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974). The Commonwealth conceded that appellant suffered from mental illness, of which extensive evidence was entered. Under the M'Naughten test, the only remaining questions were whether appellant, because of his mental disease, knew the nature and quality of his acts or that they were wrong. On these points, the trial court permitted appellant to enter both lay and expert evidence. The excluded evidence, although it may have demonstrated that appellant was mentally ill or revealed the causes of the illness, did not bear on the question at issue. See *Commonwealth v. Kichline*, 468 Pa. 265, 284, 361 A.2d 282, 292 (1976); *Commonwealth v. Stewart*, 461 Pa. 274, 336 A.2d 282 (1975).

■ Appellant contends that the trial court erred in denying three of his requested points for charge. Point No. 11 read:

> "I charge you that if you should find from the evidence in this case that John Harry Bruno the defendant, believed that there were witches, and that he had a right to kill them, and if you further find that such belief was the product of a diseased brain, or if you have a reasonable doubt that such condition of brain existed at the time of the homicide, and that this act was the result of such diseased brain, you will acquit."

The trial court properly denied this point because it does not correspond to the M'Naughten test. The point erroneously directs the jury to acquit appellant regardless of whether he knew the nature and quality of his acts or that they were wrong.

■ Appellant's point No. 7 read:

> "In order for a defendant to be found legally insane, there must be such a perverted and deranged condition of the mental and moral facilities that the defendant at the time of the commission of the crime was deprived of his memory and understanding and was unable to comprehend the nature of his action and to distinguish between moral good and evil."

The trial court accepted the point only after substituting "right" for "moral good" and "wrong" for "evil," so that the last phrase of the point read . . . "to distinguish between right and wrong." The trial court did not err in conforming the last passage of the point to the M'Naughten test. Indeed, the point, as read to the jury, was far more favorable than any to which appellant was entitled. See *Commonwealth v. Bruno, III*, supra.

Appellant's point No. 10 provided:

> "In way of illustration of M'Naughten, I charge you as follows: Suppose X shoots and kills Y because he thinks Y is a deadly snake. X would be legally insane under the first part of M'Naughten because incapable of knowing what he is doing.

Suppose, however, X knew he was killing a man, but thought he was acting pursuant to divine command. He would then be legally insane under the second part of M'Naughten because incapable of judging that it was wrong."

The trial court concluded that this point might confuse the jury in a case where there was evidence of appellant's belief that his victims were witches, but none that he believed he was acting by divine command. Even if the point is unobjectionable, the trial court's charge correctly set out the M'Naughten test. The court was not required to give a specific illustration of application of the test. See *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975) (no error in refusing specific instruction covered by general charge).

Appellant argues that the trial court erroneously excluded testimony from a psychiatrist and a priest concerning their definitions of the terms "right" and "wrong." The M'Naughten standard is a legal test, not a medical or theological one. Accordingly, the terms of the test are legal, and definition of those is not a matter for the jury. Cf. *Commonwealth v. Cameron*, 247 Pa.Super. 435, 372 A.2d 904 (1977) (trial court properly refused requested instruction permitting the jury to interpret legal term of statute). The trial court correctly excluded the proffered testimony.

Appellant next argues that, on retrial, he was entitled to a new suppression hearing to determine admissibility of evidence ruled admissible at the suppression hearing before his first trial. In *Commonwealth v. Bruno, III*, supra, the Supreme Court upheld admissibility of the challenged evidence. When the Supreme Court on direct appeal from the first trial held admissible the evidence appellant moved to suppress, the trial court on remand was without power to review that ruling. *Commonwealth v. Romberger*, 474 Pa. 190, 378 A.2d 283 (1977).

Appellant asserts that a new suppression hearing is required nonetheless, because he alleges that, since the first

suppression hearing, he has become aware of facts bearing on suppression not previously available. He states that he now remembers that he revealed to the investigating officers the location of some of the evidence seized during the challenged search; that, while committed to Farview State Hospital from 1967 to November, 1973, he forgot this fact; and that, during the three months after discharge from the hospital and before the first trial in January, 1974, he was unable to bring the fact to counsel's attention because of insufficient review of the matter. Assuming that a trial court may, in some extraordinary circumstances, hold a suppression hearing even after the Supreme Court has upheld admissibility of the evidence sought to be suppressed, cf. *Commonwealth v. Valderrama*, 479 Pa. 500, 388 A.2d 1042 (1978) (after discovered evidence not previously available may justify new trial), appellant has not provided any basis for holding a new hearing. The information allegedly discovered only recently was available to appellant at the time of the suppression hearing. Indeed, it was his own statement to investigating officers. He offers no reason why, with due diligence, he could not sufficiently review the matter during the three months before trial to refresh his memory. Significantly, he does not allege that his loss of memory resulted from mental illness or that counsel, because of insufficient time available for preparation, provided inadequate assistance. In these circumstances, the trial court correctly refused to hold a second suppression hearing. Cf. *Commonwealth v. Hayward*, 437 Pa. 215, 263 A.2d 330 (1970) (information available to defendant at time of trial is not after-discovered evidence justifying grant of new trial); *Commonwealth v. Reid*, 432 Pa. 319, 247 A.2d 783 (1968) (same).

■ Appellant argues that the court erred in refusing to grant his motion for change of venue. According to appellant, the pretrial publicity of his case, including that of his first trial, was so pervasive that the jury at his second trial,

held 29 months later, must have formed a fixed opinion of guilt or innocence as a result. During the week before retrial, three newspaper articles appeared reporting the scheduled prosecution. To ensure that any publicity surrounding the trial did not penetrate the jury, the trial court permitted individual voir dire of prospective jurors. Before empanelling of the jury, counsel interrogated each member of the jury to learn if he had heard of the case, and one juror, who stated that he had heard that appellant was to be retried, was excused. Throughout the trial, the court sequestered the jurors and again questioned the jurors until the court was satisfied that the jurors had not heard any publicity about the case. We conclude that the trial court did not abuse its discretion in denying appellant's motion for change of venue. See, *Commonwealth v. Casper*, 481 Pa. 143, 392 A.2d 287 (1978); *Commonwealth v. Kichline*, supra; *Commonwealth v. Bruno, III*, supra; *Commonwealth v. Powell*, 459 Pa. 253, 328 A.2d 507 (1974).

■ The remaining issues appellant presents have not been preserved for appellate review. Appellant attacks the M'Naughten test of insanity as unconstitutional. At trial, however, he failed to raise this challenge. See *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). Similarly, appellant claims that the prosecuting attorney engaged in prejudicial misconduct by referring to a fact not in evidence and contained only in a suppressed statement. Appellant admits that he did not object to the prosecutor's comment, but argues that it was plain error. *Commonwealth v. Clair*, supra, established five years ago that claims of plain and fundamental error will not preserve for appellate review alleged errors to which objection was not made at trial. Therefore, we do not pass on the merits of either of these issues. *Commonwealth v. Hollis*, 483 Pa. 427, 397 A.2d 417 (1979).

Judgments of sentence affirmed.