431 A.2d 322

**COMMONWEALTH of Pennsylvania**

v.

**Joseph Manuel MAYS, Appellant.**

Superior Court of Pennsylvania.

Submitted April 16, 1980.

Filed June 19, 1981.

Petition for Allowance of Appeal Denied Sept. 28, 1981.

130

David A. Murdoch, Sharon, for appellant.

David B. Douds, Assistant District Attorney, Mercer, for Commonwealth, appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

WICKERSHAM, Judge:

On November 28, 1978, appellant, Joseph Manuel Mays, was tried without a jury before the Honorable Albert E. Acker of the Court of Common Pleas of Mercer County. Appellant was found guilty of robbery and conspiracy to commit robbery. Post-verdict motions were denied, and appellant was sentenced to concurrent terms of imprison-

ment of three to six years for both offenses. This appeal followed.[1]

The issue on appeal is whether the lower court erred in failing to suppress certain physical evidence and oral statements obtained by the police as a result of appellant's arrest. Appellant argues that the arrest was illegal because the arresting officer, Officer Samuel Hagash of the Shenango Township Police Department, did not have authority to arrest appellant in the Borough of West Middlesex. The issue turns on the interpretation of a "Mutual Aid Agreement, Police Services" between the City of Sharon, the Municipality of Hermitage, the Township of Shenango, the Borough of West Middlesex, and other municipalities, all being political subdivisions of Mercer County.

This matter was initially heard upon an omnibus pre-trial motion by the Honorable John Q. Stranahan, President Judge, who concluded in an opinion on October 4, 1978, that Officer Hagash had the authority to arrest appellant in the Borough of West Middlesex under the municipal aid agreement. Judge Acker reached the same conclusion in his opinion on May 7, 1979, written pursuant to Pa.R.A.P. 1925. Our responsibility on review is to determine whether the record supports the factual findings and conclusions of law

---

1. Since timeliness of an appeal is a jurisdictional requirement, we may raise it in the instant appeal *sua sponte. Commonwealth v. Gottshalk,* 276 Pa.Super. 102, 104, 419 A.2d 115, 116 (1980). The general rule is that untimely appeals must be quashed. *Commonwealth v. Dorman,* 272 Pa.Super. 149, 151 n.1, 414 A.2d 713, 714 n.1 (1979). A notice of appeal must be filed within thirty days after the entry of the order from which the appeal is taken. Pa.R.A.P. 903(a). "When the order appealed from is a judgment of sentence, the date of the entry of the order is the day the court imposes sentence on the defendant, informs him of his right to appeal within 30 days, and enters the judgment on the docket." *Commonwealth v. Gottshalk, supra* 276 Pa.Super. at 105, 419 A.2d at 116 (citing *Commonwealth v. Dorman, supra,* 272 Pa.Super. at 155, 414 A.2d at 717) (footnote omitted). In our case, the notice of appeal was filed on April 6, 1979. Thirty-one days earlier, on March 6, appellant was sentenced by the lower court. The judgment was not entered on the clerk of courts criminal docket until March 8, 1979, however. Moreover, at sentencing appellant was not informed by the court below that he had thirty days from that date—March 6, 1979, to appeal. For these reasons we will address the merits of appellant's argument.

made by the lower court. *Commonwealth v. Kichline*, 468 Pa. 265, 280, 361 A.2d 282, 290 (1976). In making this determination, this court will consider only the evidence of the Commonwealth and so much of the evidence of the defense as remains uncontradicted. *Id.*, 468 Pa. at 280–281, 361 A.2d at 290. In the instant case, the defense presented no evidence at the omnibus hearing.

The relevant facts may be summarized as follows. On July 15, 1978, just prior to noon, appellant, accompanied by Leroy Wiggins, Jr., robbed the sole attendant at a Falcon Gas Station located on East State Street in Hermitage. Appellant pointed a loaded shotgun through the window of a car at the gas attendant, while Wiggins held a knife against the attendant's ribs and demanded money. Wiggins took approximately $300 in cash and drove away with appellant.

At approximately noon that day, the dispatcher for Hermitage Police Department broadcasted on the county frequency to all of the police departments in Mercer County that a possible armed robbery had taken place at the Falcon Gas Station. The dispatcher then telephoned the gas station and verified that there was a robbery. The victim informed the dispatcher that a shotgun was used and that the perpetrators were two black males. He stated that they drove west on East State Street toward the City of Sharon in an old grey 1967 Pontiac LeMans with primer paint on it and an Ohio temporary tag taped to the right rear window. This additional information was broadcasted to all of the county police departments.

The dispatcher next received a phone call from a businessman who said that he observed a car matching the above description going south on Route 18 toward the Borough of West Middlesex. This information was also broadcasted throughout the county. Both the Shenango and West Middlesex Police Departments acknowledged receipt of the broadcasts made by the Hermitage dispatcher.

Officer Andrew Formichella of the West Middlesex Police Department was the only officer on duty in the Borough of West Middlesex at the time of this occurrence. He was in a

diner when he heard the broadcasts of the Hermitage dispatcher. As he was leaving the diner in his police car, he saw the pontiac on Route 18 and began to follow it. The pontiac accelerated, and Officer Formichella turned on the police cruiser's red light and radioed on the county frequency that he was in pursuit of a suspect vehicle going south on Route 18 approaching Route 318.

Officer Samuel Hagash of the Shenango Township Police Department, who had also heard the broadcasts of the Hermitage dispatcher about the robbery, radioed on the county frequency that he was in his police cruiser at Route 18 and Route 318. Officer Hagash proceeded north on Route 18 in the opposite direction of the suspect vehicle until he saw the Pontiac coming south with the West Middlesex cruiser immediately behind it. He then pulled his car across the roadway stopping the Pontiac. He exited his vehicle with his service revolver drawn and ordered the occupants to get out of the car. Appellant was frisked, handcuffed, and placed into the police cruiser by Officer Hagash, while his companion, Wiggins, was taken into custody by Officer Formichella. These arrests took place in the Borough of West Middlesex.

The Township of Shenango totally surrounds the Borough of West Middlesex so that Shenango police officers travel through the borough in order to patrol various parts of Shenango Township. On October 15, 1977, the Township of Shenango and the Borough of West Middlesex, along with other municipalities, entered into the "Mutual Aid Agreement, Police Services" pursuant to the authority provided by the following statute:

### § 483. Cooperation authorized; joint agreements

Two or more municipalities in this Commonwealth may jointly cooperate, or any municipality or municipalities may jointly cooperate with any municipality or municipalities located in any other state, in the exercise or in the performance of their respective governmental functions, powers or responsibilities. For the purpose of carrying

the provisions of this act into effect the municipalities cooperating shall enter into such joint agreements as may be deemed appropriate for such purposes.

Act of July 12, 1972, No. 180, § 3, 53 P.S. § 483.

Townships and boroughs are included in the definition of "municipality." Act of July 12, 1972, No. 180, § 1, 53 P.S. § 481.

The pertinent sections of the "Mutual Aid Agreement, Police Services" are as follows:

NOW, THEREFORE, in consideration of their mutual covenants, the parties hereto agree as follows:

1. In the event of or the threat of an emergency, disaster or widespread conflagration which cannot be met with the facilities of one of the municipal parties hereto, the other municipal parties agree, *upon proper request,* to furnish police assistance to the party requesting such assistance upon either an actual or standby basis. The extent of assistance to be furnished under this agreement shall be determined solely by the municipal party furnishing such assistance, and it is understood that the assistance so furnished may be recalled at the sole discretion of the furnishing party.

2. Details as to methods of requesting such assistance, the persons authorized to send and receive such requests, and the nature of the assistance provided will be established from time to time by correspondence and/or agreement between the parties hereto.

3. While providing mutual aid assistance, any police officer rendering such assistance shall have the same powers and authority conferred by law on the members of the police department of the municipality to which such assistance is rendered.

. . . .

8. The provisions of this agreement shall not be construed to impose an obligation on any municipal party

hereto to respond to a request for mutual aid assistance. At any time such assistance is requested, the municipal party so requested may, for any reason, deem it advisable not to respond and may so inform the requesting municipality.

■ According to this municipal aid agreement, the Borough of West Middlesex and the Township of Shenango may furnish police assistance to each other "[i]n the event of or the threat of an emergency, disaster or widespread conflagration which cannot be met with the facilities of one of [them]." *Id.* at para. 1. In the instant case, a lone West Middlesex police officer was attempting to stop two robbers who were fleeing through his jurisdiction and who were armed with a shotgun. Innocent persons on the street, as well as the police officer, were endangered by the robbers' continued flight. We agree with the conclusion of the lower court that these circumstances constituted an emergency which could not be met with the facilities of the Borough of West Middlesex.

■ Appellant argues on appeal, as he did before the lower court, that Officer Hagash of the Shenango Police Department was not acting pursuant to the municipal aid agreement, because he did not receive a request for assistance from the West Middlesex police officer. Appellant contends that such a request is required under the agreement. The specific section of the agreement at issue is the statement that "the other municipal parties agree, *upon proper request,* to furnish police assistance to the party requesting such assistance upon either an actual or standby basis." *Id.*

We agree with the lower court that a formal or specific request for assistance is not a prerequisite for rendering police assistance under the agreement. As Judge Acker stated in his opinion on May 7, 1979, "[t]o require the police to formally request the assistance of the police of a neigh-

boring contiguous municipality might well frustrate the very purpose of the mutual aid agreement." *Id.* at 9. The phrase used in the agreement is simply *"upon proper request,"* and we hold that a proper request for assistance may be implied from the circumstances of a case.

Instantly, two robbers were passing through more than one municipal jurisdiction as they fled the scene of the crime. The dispatcher of one police department was broadcasting the information concerning the robbers' movements on the county frequency to all of the police departments in Mercer County. When the West Middlesex officer began to chase the robbers, he radioed on the county frequency that he was in pursuit, and he heard the Shenango officer report his location. (Omnibus Hearing on October 4, 1978, N.T. 34, 41). The Shenango officer testified that when he saw the suspect vehicle on Route 18 being pursued by the West Middlesex police cruiser, he was aware of the fact that Officer Formichella was the only officer on duty in the Borough of West Middlesex. (Omnibus Hearing, N.T. 57). We conclude that under these facts there was an implied request for the assistance of the Shenango officer by the West Middlesex officer, and, therefore, the Shenango officer had the authority to arrest appellant in the Borough of West Middlesex pursuant to the municipal aid agreement.[2]

Judgment of sentence is affirmed.

**2.** In *Commonwealth v. Bable*, 254 Pa.Super. 72, 385 A.2d 530 (1978), this court held in a *per curiam* opinion that a "tacit" agreement between police departments of two municipalities allowing police officers of one municipality to arrest in the other was invalid. This court gave the following reason for its decision:

[S]uch an agreement made between police departments does not confer authority to make such arrests because only the municipalities may enter into such agreements. Police departments have no authority to do so.

*Id.*, 254 Pa.Super. at 76, 385 A.2d at 531.

In the instant case, the mutual aid agreement was between the municipalities of the Borough of West Middlesex and Shenango Township, and not between their police departments. The holding in *Bable* is, therefore, not applicable here.