J-A05026-21

2021 PA Super 176

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
GRIFFIN CAMPBELL :
:
Appellant : No. 518 EDA 2020

Appeal from the PCRA Order Entered January 10, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001793-2014

BEFORE: OLSON, J., NICHOLS, J., and STEVENS, P.J.E.*

OPINION BY NICHOLS, J.: **FILED SEPTEMBER 01, 2021**

Appellant Griffin Campbell appeals from the order denying his timely

first petition for relief under the Post Conviction Relief Act[1] (PCRA) without a

hearing. Appellant argues that the PCRA court erred in rejecting his claims

that trial counsel was ineffective based on counsel's alleged conflicts of

interests and his failure to object during the Commonwealth's closing

arguments. We affirm.

The underlying facts of this matter are well known to the parties. Briefly,

Appellant was convicted of involuntary manslaughter and related offenses for

his role in a 2013 building collapse that killed and injured multiple people at

the Salvation Army thrift store in Philadelphia. On June 8, 2016, Appellant

_____

* Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

was sentenced to an aggregate term of fifteen to thirty years' incarceration. On direct appeal, this Court affirmed Appellant's sentence. *See Commonwealth v. Campbell*, 1810 EDA 2016, 2018 WL 4214642 (Pa. Super. filed Sep. 5, 2018) (unpublished mem.), *appeal denied*, 201 A.3d 149 (Pa. 2019). Appellant was represented by William Hobson, Esq. (Attorney Hobson) at trial and on direct appeal.

Appellant filed a timely *pro se* PCRA petition on February 12, 2019. The PCRA court appointed counsel who subsequently filed an amended petition on Appellant's behalf. Therein, Appellant alleged that Attorney Hobson was ineffective for failing to object to statements by the prosecutor during closing arguments. Am. PCRA Pet., 5/13/19, at 4 (unpaginated). Appellant also claimed that Attorney Hobson's "multi-level conflict of interest" rendered him ineffective. *Id.* at 3. Specifically, he claimed that Attorney Hobson (1) "clearly had divided loyalties" due to his prior representation of two witnesses, Frank Parker and Sean Benschop; and (2) was a possible fact witness. *Id.* However, Appellant did not explain how he was prejudiced by Attorney Hobson's alleged conflicts. *See id.*

On November 22, 2019, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing. Appellant did not file a response. The PCRA court issued an order dismissing Appellant's petition on January 10, 2020.

On appeal, Appellant raises the following issues:

1. Was not [Appellant] deprived of his right to the effective assistance of counsel in that [Attorney Hobson] had multiple conflicts of interests?

2. Did not the prosecutor commit multiple acts of misconduct by vouching for four Commonwealth witnesses, by testifying as to facts not on the record, by commenting improperly about [Appellant's] character witnesses, and by urging the jury to feel sorry for the victims?

Appellant's Brief at 7 (some formatting altered).

**Attorney Hobson's Conflicts of Interest**

In his first claim, Appellant argues that he was deprived of the right to a fair trial because trial counsel had multiple conflicts of interest. *Id.* at 11. First, he claims that Attorney Hobson had personal knowledge about the building collapse because he visited the site "numerous times before the collapse and was involved in negotiations for [Appellant] to gain roof access, an important issue in the case." *Id.* at 16. He asserts that "[c]learly, this testimony made [Attorney Hobson,] in the eyes of the jury, a witness they would have wanted to hear from." *Id.*

Second, Appellant asserts that because Attorney Hobson previously "represented another co-defendant,[2] [Parker], in a prior criminal case," his representation "may well have had the effect of inhibiting [Attorney] Hobson's cross-examination of Parker" in Appellant's case. *Id.*

_____

[2] Although Appellant refers to Parker as a co-defendant, the record reflects that Parker was never charged with any crimes in connection with the building collapse and that Parker testified on behalf of the defense.

- 3 -

Third, Appellant claims that Attorney Hobson had a conflict because he previously represented co-defendant Benschop, who testified for the Commonwealth. *Id.* Specifically, Appellant notes that Attorney Hobson appeared as Benschop's counsel at the hospital after the building collapse, at which time he told Benschop not to answer questions by the OSHA investigators. *Id.* at 13-14. Although Attorney Hobson's representation of Benschop was limited to a single instance, Appellant argues that "[p]ermitting Attorney Hobson to remain as [Appellant's] attorney created a structural defect in [Appellant's] right to due process and a fair trial (and appeal)" and that he is entitled to a new trial. *Id.* at 20-21.

The Commonwealth responds that Appellant's conflict-of-interest claims are meritless. Commonwealth's Brief at 9. The Commonwealth argues that the trial court inquired about any potential conflict concerning the "fact witness" issue prior to trial and that, "in any event . . . [Appellant] has not demonstrated that counsel's testimony was at all necessary to his defense." *Id.* at 23. The Commonwealth explains that "there was no dispute (and plenty of evidence was presented that showed) that at the time of the collapse the relevant parties were trying to reach an agreement that would permit [Appellant] to have access to the roof" and "other than the roof-access issue, [Appellant] has not identified any other matters that supposedly necessitated counsel's testimony." *Id.*

The Commonwealth also argues that Appellant failed to show that Attorney Hobson actively represented conflicting interests or that the alleged conflicts adversely affected his representation of Appellant. *Id.* at 10. The Commonwealth notes that Parker was a defense witness, not a co-defendant. *Id.* at 19. Further, because Parker was a defense witness, the Commonwealth notes that "counsel did not cross-examine him" and "[i]ndeed, because his testimony was favorable to defendant, counsel did not need to challenge it in any way." *Id.* at 19. The Commonwealth also contends that Attorney Hobson's "previous representation of Parker had nothing to do with this case—it stemmed from robbery and related charges that Parker had faced—and those charges had been resolved in his favor" before Appellant's trial. *Id.*

With respect to Benschop, the Commonwealth argues that Attorney Hobson's representation "was of an extremely transient and limited nature, and there is no basis for concluding that it had an adverse impact on his subsequent representation of [Appellant] at trial." *Id.* at 12. Specifically, the Commonwealth asserts that the representation "consisted of nothing more than [Attorney Hobson] going, at [Appellant's] request, to the hospital where Benschop was being treated, advising him with respect to whether he should speak with the OSHA investigators at that time, and ensuring that he would be represented by another attorney who would be free of any conflicts." *Id.* at 14. Further, the Commonwealth argues that "a review of the record confirms that counsel was not in any way inhibited in his ability to vigorously challenge Benschop's testimony at trial." *Id.*

Our standard of review from the denial of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Ousley**, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Mitchell**, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted).

We presume that the petitioner's counsel was effective. **Commonwealth v. Williams**, 732 A.2d 1167, 1177 (Pa. 1999). To establish a claim of ineffective assistance of counsel, a defendant "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." **Commonwealth v. Turetsky**, 925 A.2d 876, 880 (Pa. Super. 2007) (citations omitted).

The burden is on the defendant to prove all three of the following prongs: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." **Id.** (citations omitted). Moreover, "[a] failure to satisfy any prong of the ineffectiveness

test requires rejection of the claim of ineffectiveness." **Commonwealth v. Daniels**, 963 A.2d 409, 419 (Pa. 2009) (citation omitted).

The prejudice standard for an ineffectiveness claim is a higher standard than the harmless error analysis typically applied when assessing allegations of trial court error. **See Commonwealth v. Gribble**, 863 A.2d 455, 472 (Pa. 2004). Instead, a petitioner must prove "actual prejudice," which our Supreme Court has defined as follows:

> [A] reasonable probability that, but for counsel's lapse, the result of the proceeding would have been different. In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Ultimately, a reviewing court must question the reliability of the proceedings and ask whether the result of the particular proceeding was unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

**Commonwealth v. Crispell**, 193 A.3d 919, 932 (Pa. 2018) (citations omitted and formatting altered).

To succeed on a claim that counsel had a potential conflict-of-interest, a petitioner must prove actual prejudice. **Commonwealth v. Sepulveda**, 55 A.3d 1108, 1147 (Pa. 2012); **see also Commonwealth v. Cousar**, 154 A.3d 287, 310 (Pa. 2017) (citations omitted) (stating that where a "case involves successive and not dual representation, [an] appellant must demonstrate he was prejudiced by any potential conflict of interest" (citations omitted)).

However, prejudice is presumed "when the appellant shows that trial counsel was burdened by an 'actual'—rather than mere 'potential'—conflict of interest. To show an actual conflict of interest, the appellant must demonstrate that: (1) counsel 'actively represented conflicting interests'; and (2) those conflicting interests 'adversely affected his lawyer's performance.'" **Sepulveda**, 55 A.3d at 1147 (citation omitted).

"The interests of clients conflict when they diverge with respect to a material factual or legal issue or course of action." **Cousar**, 154 A.3d at 310 (citation omitted). Further, our Supreme Court has explained:

> [I]n focusing on the "active" nature of the conflict, the Court's concern centers primarily on the potential for an attorney to alter his trial strategy due to extrinsic considerations stemming from other loyalties, thereby distorting counsel's strategic or tactical decisions in a manner that would not occur if counsel's sole loyalty were to the defendant. In this vein, courts sometimes assess adverse effect by questioning whether the record shows that counsel "pulled his punches," *i.e.*, failed to represent the defendant as vigorously as he might have done had there been no conflict.

**Commonwealth v. King**, 57 A.3d 607, 619 (Pa. 2012) (citations omitted).

Additionally, our Supreme Court has found prejudice when trial counsel had a conflict of interest due to his personal involvement in the defendant's case. **Commonwealth v. Fontana**, 415 A.2d 4, 7 (Pa. 1980). In **Fontana**, the Court explained that trial counsel was a "material witness to at least some of the events which culminated in [the defendant's] arrest and trial," including whether or not the defendant participated in a cover up which formed the

basis of his criminal charges. *Id.* In concluding that trial counsel's personal knowledge prejudiced the defendant, the Court explained:

> If counsel's testimony would have tended to exculpate his client, then certainly he had the obligation to his client to take the witness stand in his behalf. If, on the other hand, counsel's testimony would have tended to incriminate [the defendant], then under the circumstances presented here it would also have tended to implicate counsel [and] obviously this situation would create a conflict preventing or substantially hindering, counsel from providing the zealous advocacy to which [the defendant] is entitled.

*Id.* (footnote and citation omitted) (formatting altered).

Here, with respect to Appellant's claim that counsel had a conflict due to his personal knowledge about the building collapse, the PCRA court explained:

> It is true that there was testimony that [Attorney] Hobson had visited the building in the weeks prior to its collapse and that he was present at [Appellant's] meeting with OSHA. Frank Parker testified that [Attorney] Hobson visited the building several times in his capacity as [Appellant's] lawyer because [Appellant] was having difficulty gaining access to the roof. N.T. 10/14/2015 at 150-51. Sarah Carle, a representative of OSHA, testified that when she interviewed [Appellant] shortly after the building collapse, [Attorney] Hobson was present as [Appellant's] attorney. N.T. 10/7/2015 at 285. However, [Appellant] made no allegations and proffered no evidence in his PCRA submissions that [Attorney] Hobson, as a result of these activities, could have offered testimony at trial that would have been relevant and not cumulative. Nor did [Appellant] explain how a different lawyer trying the case could have somehow helped [Appellant's] cause by calling [Attorney] Hobson as a witness. Moreover, [Appellant] makes no averments and no evidence was presented at trial that suggested [Attorney] Hobson had anything to do with the building collapse.

PCRA Ct. Op., 6/9/20, at 5.

As to Attorney Hobson's prior representation of Parker and Benschop, the PCRA court stated:

Regarding Frank Parker, the record demonstrates that [Attorney] Hobson represented him in an unrelated criminal matter that was dropped after a *nolle prosequi* and that [Attorney] Hobson no longer represented Parker at the time of Appellant's trial. ***See*** N.T. 10/14/2015 at 114-24. [Appellant] does not identify how [Attorney] Hobson's prior representation of [Mr.] Parker could have caused [Attorney] Hobson to actively represent conflicting interests, and he makes no allegations that any conflict could have somehow adversely affected [Attorney] Hobson's performance. Accordingly, [Appellant] has failed to demonstrate any conflict related to Mr. Parker that could support [Appellant's] claim of ineffective assistance of counsel.

Regarding co-defendant Sean Benschop, it is true that [Attorney] Hobson previously represented Benschop while he spoke to OSHA representative Sarah Carle shortly after the building collapse. ***See*** N.T. 10/7/2015 at 294; N.T. 10/8/2015 at 96-97, 174-75. Shortly thereafter, however, [Attorney] Hobson ceased representing Benschop. On June 26, 2013, Daine Grey, Esquire entered his appearance on behalf of Benschop. Mr. Grey represented Benschop until his motion to withdraw as counsel was granted on January 16, 2015. Thereafter, William Davis, Esquire was appointed to represent Benschop. On July 21, 2015, Benschop pled guilty, pursuant to a negotiated plea agreement, to six counts of involuntary manslaughter, twelve counts of REAP, one count of causing a catastrophe, and one count of aggravated assault. Thereafter, the [trial] court imposed the aggregate negotiated sentence of ten-to-twenty years' incarceration.

The record shows that [Attorney] Hobson stopped representing Benschop well before Benschop pled guilty and well before [Appellant's] trial took place in October of 2015. [Appellant] has made no allegations as to how [Attorney] Hobson's brief representation of Benschop actively conflicted with or adversely affected his representation of [Appellant]. While Benschop was a Commonwealth witness, [Appellant] fails to make any averments that would support a claim that [Attorney] Hobson's cross-examination of Benschop or that his handling of the case in any

other way, could have been affected by [Attorney] Hobson's prior representation of Benschop. Accordingly, [Appellant] has failed to demonstrate any conflict related to Mr. Benschop that could support [Appellant's] claim of ineffective assistance of counsel.

PCRA Ct. Op. at 6-7.

Based on our review of the record, we conclude that the PCRA court's findings are supported by the record and free from legal error. *See Ousley*, 21 A.3d at 1242. As noted by the PCRA court, Appellant failed to plead that Attorney Hobson had material knowledge about the building collapse that would not have been cumulative of other evidence presented at trial. *Cf. Fontana*, 415 A.2d at 7. Further, Appellant's PCRA pleadings did not establish that Attorney Hobson had an "actual conflict" of interest based on his prior representation of Parker and Benschop or, in the alternative, that Attorney Hobson had a potential conflict that resulted in actual prejudice. *See Sepulveda*, 55 A.3d at 1147; *see also Cousar*, 154 A.3d at 310. Therefore, Appellant is not entitled to relief. *See Sepulveda*, 55 A.3d at 1147; *see also Cousar*, 154 A.3d at 310.

**Prosecutorial Misconduct**

Appellant also argues that counsel was ineffective for failing to object to several instances of prosecutorial misconduct by the Commonwealth during closing arguments. Appellant's Brief at 22. Specifically, Appellant claims that the Commonwealth (1) improperly vouched for four Commonwealth witnesses by stating that they told the truth at trial; (2) made an improper remark concerning the small number of character witnesses who testified on

Appellant's behalf; and (3) explicitly urged the jury to feel sorry for the victims. *Id.* at 22-24. Appellant contends that each of these statements were "improper" and that "[c]ollectively, they formed a pattern of impropriety which overwhelmingly deprived [Appellant] of a fair trial." *Id.* at 24. Therefore, Appellant asserts that because Attorney Hobson "had absolutely no reason not to object" to these statements, Appellant was "deprived of the effective assistance of counsel, and must be granted a new trial." *Id.* at 24.

"Generally, a prosecutor's arguments to the jury" do not constitute reversible error "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds [a] fixed bias and hostility towards the [defendant] which would prevent them from properly weighing the evidence and rendering a true verdict." *See Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa. Super. 2004) (citation omitted). "A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor." *Id.* (citation omitted).

Further, we have explained that "[o]ur review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial." *Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (citation omitted). A prosecutor's comments "must be examined within the context of defense counsel's conduct[,]" and "the prosecutor may fairly respond to points made" by the defense. *See id*. at 1020 (citation omitted). "Moreover, prosecutorial

misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair." **Id.** (citation omitted).

Here, the PCRA court thoroughly addressed Appellant's claims and concluded that he was not entitled to relief. **See** PCRA Ct. Op. at 9-16. Specifically, the PCRA court noted that the prosecutor's statements were a fair response to defense counsel's attacks on the witnesses' credibility and "to defense counsel's appeals for sympathy to [Appellant]." **Id.** at 9, 15. Further, the PCRA court found that the prosecutor's remarks about Appellant's character witnesses were a fair attack on the quality of that evidence. **Id.** at 14. Therefore, the PCRA court concluded that Attorney Hobson "was not ineffective for failing to object to the challenged comments because the prosecutor's comments were neither improper nor denied [Appellant] a fair trial." **Id.** at 16; **see also Judy**, 978 A.2d at 1019-20; **Poplawski**, 852 A.2d at 327. The PCRA court's findings are supported by the record and we discern no legal error in the PCRA court's conclusions. **See Ousley**, 21 A.3d at 1242. Therefore, we affirm on the basis of the PCRA court's analysis of this issue. **See** PCRA Ct. Op. at 9-16.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/1/2021*