J-S18033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK T. HUGHES | : | |
| | : | |
| Appellant | : | No. 1068 EDA 2022 |

Appeal from the PCRA Order Entered March 15, 2022
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001892-2015

BEFORE:   PANELLA, P.J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:               **FILED JULY 26, 2023**

Appellant Patrick T. Hughes appeals the order of the Court of Common Pleas of Northampton County denying his petition pursuant to the Post-Conviction Relief Act (PCRA).[1] After careful review, we affirm.

This Court summarized the factual background of the case as follows on direct appeal:

> On November 23, 2012, the narcotics division of the Easton Police Department was involved in an ongoing investigation targeting the home of Corey Reavis. That day, officers conducted a controlled purchase of heroin from Appellant using a confidential informant. Police officers observed Appellant leave Reavis's home, walk to the informant, engage in a brief hand-to-hand transaction, and return to Reavis's home. When Appellant returned to Reavis's home, police observed Appellant interact with individuals on the front porch, including Omar Robinson. Police took photographs of

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

Appellant, Robinson, and the transaction. Police also observed Robinson's minivan parked outside the residence.

Later that day, Appellant and Robinson shot and killed Ervin Holton ("Victim") in Easton.[FN2] A witness who was driving near the scene called 911 to report the shooting. She stated that, after hearing the gunshots, she saw two individuals in dark clothing running toward a nearby minivan. The Victim died from multiple gunshot wounds; ballistics evidence confirmed that there were two shooters.

> [FN2: The Victim and Appellant were rival drug dealers and may have been in a dispute about Nicole Greene, a woman they both dated.]

During the subsequent investigation, detectives from the Easton Police Department obtained consistent surveillance video that showed two individuals exit a minivan one block from the crime scene, walk towards the location of the shooting, and shortly thereafter, run back towards the minivan and drive away. Police officers also learned that Robinson's girlfriend, Lisa Doorley, owned the minivan.

When police officers located the minivan at Robinson's home, which he shared with Doorley, Robinson confirmed that only he and Doorley drive the minivan, and that he did not allow anyone else to drive the minivan. Upon confirming that he had been driving the minivan on the night of the murder, Robinson started crying. Police searched the minivan with Doorley's consent and found gunshot residue on the steering wheel and the driver's side interior door handle.

Homicide detectives also learned that Appellant and Robinson had spent much of the day together before the murder. Reavis confirmed that he had been hanging out with Appellant and Robinson that day. Reavis admitted that he had driven and dropped off the Victim at a store near the scene of the murder shortly before Appellant and Robinson murdered him.

Also, cell phone records from Appellant and Robinson confirmed their whereabouts in south Easton, where the shooting occurred, and their close proximity to the area and each other when they placed the calls. The eyewitness called 911 at 5:39 P.M., and the cell phone records showed that Appellant and Robinson made numerous calls to Reavis before and after the murder. All calls

stopped at the precise time of the shooting, consistent with the surveillance video.

During the investigation, Appellant provided several different, inconsistent, and unsubstantiated alibis to police investigators. After his arrest, Appellant made several incriminating statements to fellow inmates (1) regarding his motive for the murder, and (2) claiming that he and his men were responsible for the murder. Relevant to this appeal, Appellant provided two recorded statements to police after reading and waiving his *Miranda* rights greeen December 5, 2012, and December 4, 2014.

*Commonwealth v. Hughes*, 2853 EDA 2017, at \*1–2 (Pa.Super. Apr. 3, 2019) (unpublished memorandum).

Appellant and Robinson were charged with homicide and criminal conspiracy in relation to the victim's shooting death. Thereafter, Appellant and Robinson were jointly tried in an eight-day trial at which the Commonwealth presented numerous witnesses including Reavis, Greene, Gregory Mack, as well as Appellant's two fellow inmates (James Martin and Timothy Graves).

On January 20, 2017, the jury convicted Appellant of first-degree murder and conspiracy. On February 28, 2017, the trial court sentenced Appellant to life imprisonment without parole. Appellant filed a timely post-sentence motion, which the trial court denied on August 4, 2017. This Court affirmed the judgment of sentence on April 3, 2019, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on

September 10, 2019, and the Supreme Court of the United States denied Appellant's petition for Writ of Certiorari on February 24, 2020.[2]

On December 11, 2020, Appellant filed a *pro se* PCRA petition.[3] Thereafter, the PCRA court appointed counsel, who filed an amended petition on Appellant's behalf on April 22, 2021. Appellant claimed he discovered that the prosecution had violated **Brady v. Maryland**, 373 U.S. 83 (1963) as it failed to disclose the defense before trial that one of the Commonwealth's witnesses, Gregory Mack, received favorable treatment in exchange for his testimony against Appellant. Mack had testified at Appellant's trial that Appellant had bragged to him that the murder of Ervin Holton was "his work." Notes of Testimony (N.T.), Trial, 1/13/17, at 177-79.

On October 7, 2021, the PCRA court held an evidentiary hearing. The Commonwealth first presented Attorney Patricia Mulqueen, an Assistant District Attorney in Northampton County who was the assigned prosecutor for Mack's drug charges docketed at CP-48-CR-0002398-2014. ADA Mulqueen recalled that although Mack was originally charged with two felony drug charges, Mack was permitted to plead to a misdemeanor possession charge,

---

[2] Robinson was also convicted of first-degree murder and conspiracy; both men were sentenced to life imprisonment without parole. This Court affirmed the judgment of sentence. **Commonwealth v. Robinson**, 2790 EDA 2017 (Pa.Super. April 2, 2019) (unpublished memorandum).

[3] Appellant's petition was timely filed. **See** 42 Pa.C.S.A. § 9545(b)(1) (providing that generally, a PCRA petition "including a second or subsequent petition, shall be filed within one year of the date the judgment of sentence becomes final").

and Mack received a probationary sentence. Notes of Testimony (N.T.), PCRA hearing, 10/7/21, at 5-8, 23.

However, ADA Mulqueen averred that her decision to give Mack a plea deal was not based on his agreement to testify for the prosecution at Appellant's subsequent murder trial. ADA Mulqueen testified that Mack's cooperation with the prosecution in Appellant's homicide case had "nothing to do with the guilty plea, the reasons why I gave him the misdemeanor offense." *Id*. at 8-10. ADA Mulqueen asserted that if Mack's guilty plea had been conditioned on his testimony at Appellant's trial, he would not have been allowed to enter his guilty plea before Appellant's trial began. *Id*. at 24-25.

Instead, ADA Mulqueen averred that she permitted Mack to enter this negotiated plea deal as she believed that Mack did not normally sell drugs, but only started to sell drugs due to financial difficulties he experienced after losing his job. *Id*. at 18-19. ADA Mulqueen characterized Mack was an "older gentleman" and a "nice guy" without any prior drug charges, who had been remorseful and cooperative with authorities in his own prosecution. *Id*. at 23-24. ADA Mulqueen remembered that the investigating detective had agreed with her decision to allow Mack to plead to the lesser charge. *Id*.

ADA Mulqueen was able to independently recall the circumstances of his plea arrangement as she found Mack's case to be "unique." *Id*. at 18. She explained that she had debated whether to drop the felony charges out of mercy towards Mack as there was a risk that he could reoffend. *Id*. at 18-19. ADA Mulqueen found Mack's case had been memorable because, upon her

decision to allow Mack to plead to the misdemeanor charge, Mack's wife had expressed gratitude to ADA Mulqueen in court and personally thanked her on behalf of her family. *Id*.

Upon questioning by the trial court, ADA Mulqueen agreed that Mack's sentencing sheet states that a condition of Mack's probation was to "cooperate with police in criminal matter." *Id*. at 26; Defendant's Exhibit 1. ADA Mulqueen noted that Mack's criminal docket sheet was made accessible to the public, including trial counsel. N.T. at 27.

The Commonwealth also presented the testimony of Appellant's trial counsel, Attorney Brian Monahan. As Attorney Monahan had not reviewed Appellant's file before the PCRA hearing, he could not recall Mack's testimony at Appellant's trial and was not aware of whether he was notified that the prosecution had given Mack a plea deal on unrelated charges. *Id*. at 28, 31, 34. Nevertheless, Attorney Monahan claimed that if he had received information that a prosecution witness had received a favorable plea deal from the Commonwealth, he would have used such information to impeach that witness's credibility on cross-examination. *Id*. at 32-33.

At the conclusion of the hearing, the PCRA court denied Appellant's petition. Appellant filed a timely appeal and complied with the PCRA court's directions to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On July 25, 2022, Appellant filed an application to proceed *pro se* on appeal. On August 22, 2022, this Court remanded this case for the PCRA court

to conduct a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998) to determine whether Appellant's waiver of counsel was knowing, intelligent, and voluntary. Thereafter, the trial court determined that Appellant's decision to proceed *pro se* was knowing, intelligent, and voluntary. The parties subsequently filed briefs on appeal.[4]

Appellant raises the following issues for our review on appeal:

I.    Did the PCRA court erred [sic] in denying the Amended Motion for Post-Conviction Relief?

II.   Did the PCRA court erred [sic] in failing to conclude that the Commonwealth committed a Brady violation in not disclosing the beneficial negotiated plea afforded to key witness Gregory Mack. (B) Failing to conclude that the Commonwealth suppressed the evidence, either willfully or inadvertently. (C) In failing to conclude that [A]ppellant established that the negotiated plea affored to key witness was in possession of the [C]ommonwealth but never was disclosed to [A]ppellant[?]

III.  Did the PCRA court erred [sic] in allowing Attorney Eyer (who announced his retirement as a conflict counsel, on January 21, 2021) to represent Appellant after he represented his co-defendant on his PCRA[?]

Appellant's Brief, at 7.

Our standard of review is as follows:

When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, we are bound by a PCRA court's credibility determinations. However, with regard to a court's legal conclusions, we apply a de novo standard.

_____

[4] The Commonwealth filed an application for an extension of time to file its brief as appellee and subsequently filed that brief. We grant the Commonwealth's request for relief.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (quotation

marks and quotations omitted).

First, Appellant claims he is entitled to a new trial based after-discovered

evidence.

> After-discovered evidence is a recognized ground for relief under the PCRA. See 42 Pa.C.S. § 9543(a)(2)(vi). Relief is due when the proponent can "demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." *Commonwealth v. Pagan*, 597 Pa. 69, 950 A.2d 270, 292 (2008). Failure to satisfy any one prong is fatal to the claim. *See Commonwealth v. Solano*, 634 Pa. 218, 129 A.3d 1156, 1180 (2015) ("As this test is conjunctive, failure to establish one prong obviates the need to analyze the remaining ones.").

*Commonwealth v. Crumbley*, 270 A.3d 1171, 1178 (Pa.Super. 2022).[5]

To support his claim of after-discovered evidence, Appellant relies on

his allegation that the prosecution committed a *Brady* violation by failing to

disclose that one of its witnesses was afforded favorable treatment in

exchange for his trial testimony. In *Brady*, the Supreme Court of the United

States held that "the suppression by the prosecution of evidence favorable to

---

[5] We acknowledge that the trial court and Appellant conflate the standards employed to review a claim for collateral relief pursuant to 42 Pa.C.S.A. § 9543(a)(2) and the newly-discovered fact PCRA timeliness exception as set forth in 42 Pa.C.S.A. § 9545(b)(1)(ii). As it is undisputed that the instant petition was timely filed, the PCRA court's jurisdiction was properly invoked and there is no need to determine whether a timeliness exception applies. Nevertheless, the PCRA court reached the correct conclusion that Appellant has not pled and proven that he is entitled to collateral relief.

an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." ***Brady***, 373 U.S. at 87.

Our Supreme Court has provided that, in order to establish a ***Brady*** violation, a defendant has the burden to prove that: "(1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant." ***Commonwealth v. Willis***, 46 A.3d 648, 656 (Pa. 2012) (citations omitted). The Supreme Court has found that "no ***Brady*** violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence." ***Commonwealth v. Bagnall***, 235 A.3d 1075, 1091 (Pa. 2020) (quoting ***Commonwealth v. Morris***, 822 A.2d 684, 696 (Pa. 2003)).

In this case, Appellant failed to establish that there was a ***Brady*** violation as Appellant did not show the prosecution had agreed to treat Mack with leniency if he testified for the Commonwealth at Appellant's homicide trial. The trial court found ADA Mulqueen was credible in testifying that Mack's negotiated plea agreement was not based on his cooperation in with the prosecution at Appellant's trial, but instead on a multitude of other reasons including Mack's cooperation in his own prosecution, expression of remorse, lack of a prior record of drug offenses, and the fact that the investigating

detective had agreed with ADA Mulqueen's decision to allow Mack to plead to a misdemeanor.

The trial court noted that Mack had already received the benefit of his bargain when he was sentenced on this plea agreement in November 2014, which was well before Appellant's trial on homicide charges in January 2017. Given the timing of Mack's guilty plea, the trial court found credible ADA Mulqueen's assertion that she would not have permitted Mack to enter this plea before Appellant's homicide trial if Mack's plea offer was contingent on his cooperation in testifying against Appellant.

We acknowledge that Mack's docketed sentencing sheet at CR-2398-2014 indicates that a condition of his probation was to "cooperate with Commonwealth on homicide case." The sentencing sheet does not specify which criminal matter it was referring to and the terms of Mack's cooperation.

Even assuming *arguendo* that the Commonwealth violated **Brady** in failing to disclose this arrangement with Appellant's defense, Appellant has not demonstrated this violation constitutes after-discovered evidence that entitles him to a new trial.

Appellant has failed to show that trial counsel could not have obtained this information prior to the conclusion of the trial by the exercise of reasonable diligence. Mack was sentenced on his guilty plea more than two years before he testified at Appellant's trial. Mack's docketed sentencing sheet was available to view as part of Mack's publicly filed criminal docket information. Appellant has not attempted to explain when he discovered this

information or why his counsel could not have discovered this information through the exercise of due diligence.

In addition, any information regarding an alleged plea agreement that the Commonwealth had with Mack would be used solely to impeach Mack's credibility. Appellant has offered no reason for which this evidence could be used other than the impeachment of Mack.

Further, Appellant has not demonstrated he was prejudiced by the Commonwealth's failure to inform his defense of the details of Mack's plea agreement before trial. We agree with the trial court's assessment that in light of the overwhelming evidence of Appellant's guilt, any evidence presented regarding Mack's negotiated guilty plea would not have changed the outcome at Appellant's trial. The trial court specifically found that:

> [a]bundant additional evidence of Petitioner's guilt was offered at trial. In addition to vast circumstantial and forensic evidence, the jury heard testimony concerning several different, inconsistent, and unsubstantiated alibis [Appellant] made to police investigators, as well as admissions that [Appellant] made to other witnesses. The credibility of these witnesses is completely unaffected by the testimony of Mack. Rather, [Appellant's] statements to Mack were corroborated by independent admissions made to these other witnesses and by the extensive circumstantial and physical evidence of guilt offered at trial.

PCRA Court Opinion (P.C.O.), 3/15/22, at 14-15.

Therefore, we conclude that the PCRA court did not err in finding that Appellant failed to demonstrate that he is entitled to a new trial based on his claim of after-discovered evidence.

In addition to the claim of after-discovered evidence raised in his counseled PCRA petition, Appellant raises three allegations of the ineffectiveness of PCRA counsel's representation for the first time on appeal. Appellant claims PCRA counsel was ineffective in failing to (1) call Gregory Mack to testify at his PCRA hearing, (2) obtain letters written by Commonwealth witnesses James Martin and Timothy Graves, and (3) reveal that he had previously represented Appellant's co-defendant Omar Robinson.

In **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), our Supreme Court held that "a PCRA petitioner may, after a PCRA court denied relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." **Id**. at 401. To be entitled to a remand, an appellant "must provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness. That is, he must establish that there are issues of material facts concerning claims challenging counsel's stewardship and that relief may be available." **Commonwealth v. Parrish**, 273 A.3d 989, 1006 (Pa. 2022) (citing **Bradley**, 261 A.3d at 402)).

As Appellant's challenges to PCRA counsel's ineffectiveness were not raised before the PCRA court, we must determine whether the record is sufficient to address Appellant's claims or whether it is necessary to remand for the PCRA court to resolve these claims with a more developed record.

In addressing Appellant's ineffectiveness claims, we are guided by the following principles:

It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 738 n.23 (2000).... Because courts must presume that counsel was effective, it is the petitioner's burden to prove otherwise. *See Pierce*, *supra*; *Commonwealth v. Holloway*, 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

[*Commonwealth v. Natividad*, 595 Pa. 188, 207–208, 938 A.2d 310, 321 (2007);] *see also Commonwealth v. Hall*, 582 Pa. 526, 537, 872 A.2d 1177, 1184 (2005) (stating an appellant's failure to satisfy any prong of the *Pierce* ineffectiveness test results in a failure to establish the arguable merit prong of the claim of ineffectiveness).

*Commonwealth v. Johnson*, 179 A.3d 1105, 1114 (Pa.Super. 2018).

Appellant claims that PCRA counsel was ineffective in failing to call Gregory Mack to testify at his PCRA hearing. In reviewing similar claims, our courts have recognized that:

[w]hen raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the *Strickland* test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. *Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523, 536 (2009); *Commonwealth v. Clark*, 599 Pa. 204, 961

- 13 -

A.2d 80, 90 (2008). To demonstrate **Strickland** prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." **Commonwealth v. Gibson**, 597 Pa. 402, 951 A.2d 1110, 1134 (2008). Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense. **Commonwealth v. Auker**, 545 Pa. 521, 681 A.2d 1305, 1319 (1996). "A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." **Id**.

**Commonwealth v. Sneed**, 616 Pa. 1, 22–23, 45 A.3d 1096, 1108–1109 (2012).

In this case, PCRA counsel knew of Gregory Mack's existence as he had testified at trial. However, Appellant has not claimed that Mack was available to testify at the time of Appellant's PCRA hearing or that he was willing to testify on Appellant's behalf. Appellant has neither set forth the substance of Mack's proposed testimony or asserted that the absence of Mack's testimony was so prejudicial as to have denied Appellant a fair trial. As such, this claim of ineffectiveness fails.

In Appellant's second ineffectiveness claim, Appellant argues that PCRA counsel failed to obtain letters that the Commonwealth allegedly possesses from prosecution witnesses James Martin and Timothy Graves. Appellant has not provided any further explanation as to the contents of such letters, how the letters would have been helpful to the defense, and whether Martin and Graves would be available and willing to testify in his defense. Further, Appellant has not alleged that he was prejudiced by counsel's failure to obtain these letters. Thus, we decline to further review this undeveloped issue.

Lastly, Appellant claims PCRA counsel was ineffective in failing to disclose that he had a conflict of interest as he previously represented Appellant's co-defendant, Omar Robinson. This Court has held that "dual representation alone does not create a conflict of interest. While the mere existence of a conflict of interest vitiates the proceedings, a defendant still has the burden of demonstrating that a conflict of interest actually did exist." **Commonwealth v. Brown**, 972 A.2d 529, 530 (Pa.Super. 2009) (citations omitted). "To show an actual conflict of interest, the appellant must demonstrate that: (1) counsel 'actively represented conflicting interests'; and (2) those conflicting interests 'adversely affected his lawyer's performance.'" **Commonwealth v. Campbell**, 260 A.3d 272, 278 (Pa.Super. 2021) (quoting **Commonwealth v. Sepulveda**, 55 A.3d 1108, 1147 (Pa. 2012)).

In his appellate brief, Appellant baldly asserts that a conflict of interest existed from PCRA counsel's representation of Appellant and Robinson and does not attempt to explain how such conflict adversely affected PCRA counsel's performance. As such, Appellant is not entitled to relief on his claim based on boilerplate allegations.

For the foregoing reasons, we affirm the PCRA court's decision to deny Appellant's PCRA petition.

Order affirmed. Commonwealth's application for extension of time to file brief granted.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 7/26/2023*