J-S08002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BRANDON ROSS SNYDER :
:
Appellant : No. 1392 MDA 2022

Appeal from the PCRA Order Entered September 7, 2022
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0001171-2017

BEFORE: OLSON, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.: **FILED: JULY 28, 2023**

Appellant, Brandon Ross Snyder, appeals from the order entered on September 7, 2022, dismissing a petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. Upon review, we affirm.

We briefly summarize the facts and procedural history of this case as follows. Appellant fraudulently used a Lowe's Home Improvement Center (Lowe's) credit card issued to Schuylkill County Child Development, Inc. (Child Development) to make purchases totaling $3,546.29 between December 18, 2016 and December 20, 2016. Appellant signed the name "Robert Ditzler" on each receipt. Robert Ditzler was a former employee of Child Development who was fired by the organization on December 6, 2016. On December 22, 2016, when making another purchase, Appellant presented the Lowe's credit

_____

[*] Retired Senior Judge assigned to the Superior Court.

card issued to Child Development together with his driver's license, which identified him as Brandon Snyder. When the cashier and a loss prevention officer at Lowe's questioned Appellant about his authorization to use the Lowe's credit card he presented, Appellant left the store without the credit card or his merchandise. An investigating police officer filed criminal charges against Appellant after reviewing Lowe's records for purchases made with the credit card issued to Child Development. On October 25, 2018, following a two-day trial, a jury convicted Appellant of access device fraud, 18 Pa.C.S.A. § 4106(a)(1)(ii). On November 27, 2018, the trial court sentenced Appellant to 18 to 36 months of incarceration. Appellant filed a timely appeal on December 27, 2018. This Court affirmed Appellant's judgment of sentence in an unpublished memorandum filed on September 9, 2019. **See Commonwealth v. Snyder**, 2019 WL 4273798 (Pa. Super. 2019). Appellant did not seek further review with the Pennsylvania Supreme Court.

On September 30, 2019, Appellant filed a *pro se* PCRA petition, which is currently at issue herein, raising four claims of trial counsel ineffectiveness.[1]

---

[1] Appellant's judgment of sentence did not become final until October 9, 2019, or 30 days after this Court's decision on direct appeal. **See** 42 Pa.C.S.A. § 9545(b)(3) ("[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."); **see also** Pa.R.A.P. 903(a) (Notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal was taken."). Because Appellant's judgment of sentence had not become final, his September 30, 2019 PCRA petition was premature. A premature PCRA petition is a legal nullity and, therefore, subject to quashal. **See**
*(Footnote Continued Next Page)*

After an evidentiary hearing on February 25, 2020, the PCRA court denied relief by order entered on May 4, 2020. Thereafter, a prior panel of this Court examined claims Appellant raised on appeal in a published opinion entered on April 20, 2021. *See Commonwealth v. Snyder*, 250 A.3d 1253 (Pa. Super. 2021). The panel found no merit in Appellant's claim that trial counsel was ineffective for failing to file a motion alleging a violation of Appellant's speedy trial rights under Pa.R.Crim.P. 600 and affirmed the PCRA court's denial of relief on this claim. *Id.* at 1260. This Court, however, vacated "the portion of the PCRA court's May 4, 2020 order denying relief as to Appellant's second, third and fourth claims" and remanded the case for appointment of new PCRA counsel. The panel granted leave for new counsel to file an amended PCRA petition, if desired, and further ordered the PCRA court to conduct additional evidentiary hearings, if necessary. *Id.* at 1263.

Upon remand, the PCRA court appointed new PCRA counsel to represent Appellant and, thereafter, conducted an additional evidentiary hearing over the course of three days, January 11, 2022, March 7, 2022, and May 9, 2022.

---

*Commonwealth v. Mojica*, 242 A.3d 949, 953 (Pa. Super 2020). As we discuss more fully, however, the PCRA court already examined the merits of Appellant's PCRA petition, and this Court took subsequent action. Hence, we decline to quash this appeal at this juncture. Under these circumstances, we conclude that it would be unjust to consider Appellant's premature PCRA petition a legal nullity. *Id.* at 954, *citing Commonwealth v. Leatherby*, 116 A.3d 73, 79 (Pa. Super. 2015) (holding that a defendant's *pro se* post-sentence motion was not a legal nullity where there was significant confusion and delay in appointing counsel, and an "administrative breakdown" led to the filing of an untimely appeal).

- 3 -

By opinion and order entered on September 7, 2022, the PCRA denied relief and dismissed Appellant's PCRA petition. This timely appeal resulted.[2]

On appeal, Appellant presents the following issues[3] for our review.

> I. Did the [PCRA c]ourt err in not finding [trial counsel] ineffective for failing to object to the participation of Assistant District Attorney [Michael J.] Stine?
>
> II. Did the [PCRA c]ourt err in not finding [trial counsel] ineffective for failing to cross[-]examine Officer [Bret] McGrath on missing evidence?

Appellant's Brief at 3 (numerals supplied; suggested answers omitted).

Both of Appellant's issues implicate the effectiveness of trial counsel. We adhere to the following standards:

> Our standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the

---

[2] On September 28, 2022, Appellant filed a timely notice of appeal. The PCRA court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on October 5, 2022. Appellant complied timely. From our review of the record, it appears that the PCRA court relied upon its earlier decision issued on September 7, 2022 as its rationale for denying relief.

[3] We previously ordered Appellant's first issue, as currently presented, to be re-examined upon remand. Appellant has abandoned the two other issues we previously remanded for further consideration; hence, they are now waived. **See** Pa.R.A.P. 2116(a) (issues not presented in the appellant's statement of questions involved portion of an appellate brief will not be considered); **see also Commonwealth v. Felder**, 247 A.3d 14, 20 (Pa. Super. 2021) (citation omitted) ("Also, an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived."). Appellant added the second issue currently presented on appeal to his amended PCRA petition prior to the initial PCRA hearing held on January 11, 2022..

record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

We presume that the petitioner's counsel was effective. To establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

The burden is on the [petitioner] to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

The prejudice standard for an ineffectiveness claim is a higher standard than the harmless error analysis typically applied when assessing allegations of trial court error. Instead, a petitioner must prove actual prejudice, which our Supreme Court has defined as follows:

> A reasonable probability that, but for counsel's lapse, the result of the proceeding would have been different. In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Ultimately, a reviewing court must question the reliability of the proceedings and ask whether the result of the particular proceeding was unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

***Commonwealth v. Campbell***, 260 A.3d 272, 277–278 (Pa. Super. 2021)

(internal citations, quotations, and brackets omitted).

In his first issue presented, Appellant claims that trial counsel was ineffective for failing to object when Assistant District Attorney, Michael J.

- 5 -

Stine, Esquire (Attorney Stine) prosecuted Appellant's trial because Attorney Stine originally supervised the public defender initially appointed to represent Appellant at the preliminary hearing. Appellant's Brief at 10-16. More specifically, Appellant maintains:

> At the time of the preliminary hearing [on June 20, 2017], [Appellant] was represented by Paul Domalakes, Esq. [(Attorney Domalakes).] Attorney Domalakes was a member of the Schuykill County Public Defender's Office. […] During this time, the Chief Public Defender was Attorney Michael J. Stine. As the Chief Public Defender, Attorney Stine had oversight of Attorney Domalakes. There was nothing to stop [assistant public defenders such as Attorney Domalakes] from coming to Attorney Stine for assistance or help.

*Id.* at 4-5. In the interim before trial, however, Attorney "Stine was hired as the First Assistant District Attorney on January 8, 2018." PCRA Court Opinion, 5/4/2020, at 5. Thereafter, upon our review of the record, by order entered on March 23, 2018, the trial court appointed private counsel, Robert Reedy, Esquire to represent Appellant at trial on October 24, 2018. As such, Appellant asserts:

> When Attorney Stine became the first assistant district attorney, any case that he handled directly as the Chief Public Defender was conflicted to the Attorney General's Office, who picked up the prosecution of those cases. Any case that he was not involved in, but one of the other Assistant District Attorneys was involved with, those cases were not sent to the Attorney General. Attorney Stine was screened out of those cases by the District Attorney's Office, so that he was not permitted to participate in any way in the cases that involved Public Defenders.
>
> During the October 2018 trial term, Assistant District Attorney Stine was picking up the slack in the office and trying cases. […] At that point in time, Attorney Stine had only been in the [District Attorney's] Office about ten months, so whenever he had to

- 6 -

handle a case, he was looking for cases where private counsel was involved. When it came to [Appellant's] matter, [Attorney Stine] looked at [the case] and said, here is one that [he could] handle because Attorney Reedy [was] private[ly retained, even though] this [case] would have fallen under one of the types of cases that Attorney Stine normally would not have overseen or participated in as a prosecutor.

Appellant's Brief at 5-6 (record citations omitted). "Because Attorney Stine had supervisory authority over [Appellant's] initial counsel," Appellant asserts, "this case generates the appearance of impropriety and causes an actual risk that confidential information could have been shared." *Id.* at 15. Hence, Appellant concludes that trial counsel was ineffective because, "Attorney Reedy should have objected to Attorney Stine's participation in the prosecution, and [Appellant] should be granted a new trial with an independent prosecutor." *Id.* at 16.

On this issue, our Supreme Court has "opted for [an] objective and flexible" standard:

which requires a determination on a case-by-case basis of whether the acts of a public prosecutor have actually tainted the proceedings so as to require a new trial with a special prosecutor appointed rather than an absolute grant of one at any allegation of the "appearance of impropriety." In [such a] situation[], where the [d]efense [a]ttorney enters the case at the post-trial level and then subsequently joins the staff of the District Attorney's office, [our Supreme Court] require[s] that a defendant show an **actual** impropriety in order to establish the requisite prejudice to a defendant. This procedure will ensure both the efficient and economical operation of the District Attorney's Office during periods where new staff members have been appointed while at the same time protecting a defendant's right to a fair trial free from any actual impropriety.

***Commonwealth v. Harris***, 460 A.2d 747, 749 (Pa. 1983) (emphasis in original).

On this issue, the PCRA court determined that Appellant did not suffer actual prejudice that resulted from trial counsel's alleged ineffectiveness. PCRA Court Opinion, 5/4/2020, at 5. First, the PCRA court acknowledged that Attorney Stine did not personally represent Appellant at any time prior to the prosecution. *Id.* at 6. Moreover, the PCRA court credited trial counsel's testimony that he "was not aware of any conflict with Attorney Stine having been Chief Public Defender at the time of the filing of the [c]omplaint." *Id.* at 5-6. Upon review, Attorney Stine testified that although he was technically supervising Attorney Domalakes at the time of Appellant's preliminary hearing, Attorney Domalakes had 25 years of experience, the case involved "a commonplace offense," there was "no reason [for Attorney Stine] to get involved," and Attorney Stine never discussed the facts or strategy of the case with Attorney Domalakes. N.T., 1/11/2022, at 53-54. Even after Attorney Stine began working for the District Attorney's Office, he had no knowledge of Appellant prior to being assigned the case. *Id.* at 54-55. The PCRA court also found "Appellant's testimony unreliable and not worthy of belief because of a lengthy record of *crimen falsi* convictions beginning [in] January [] 2008." PCRA Court Opinion, 5/4/2020, at 6.

The record supports the PCRA court's decision, and we will not usurp the PCRA court's credibility determinations. Although Appellant claims that there was the potential for impropriety and a risk that confidential information

could have been shared, there is no evidence to suggest that there was improper conduct between trial counsel representing Appellant at the preliminary hearing and Attorney Stine in his capacity as assistant district attorney for the Commonwealth. As such, Appellant has failed to show that he was prejudiced. Accordingly, we reject Appellant's first claim that trial counsel was ineffective.

In his second issue presented, Appellant claims that trial counsel was ineffective for failing to adequately cross-examine the investigating officer, Officer Bret McGrath, regarding alleged missing evidence. Appellant also claims that trial counsel should have requested a missing evidence jury instruction. *See* Appellant's Brief at 16-19. Appellant asserts that Robert Ditzler, "the authorized user of the [Lowe's credit] card in question[,] did not testify at either the preliminary hearing or the jury trial[.]" *Id.* at 17. Accordingly, Appellant argues:

> At the [j]ury [t]rial[,] Officer M[c]Grath testified that he had interviewed and had a written statement from Robert Ditzler. Officer M[c]Grath also stated that he provided that statement to Mr. Ditzler at the preliminary hearing. However, Mr. Ditzler did not participate at the preliminary hearing. [] At the PCRA hearing, Attorney Reedy could not recall if a preliminary hearing transcript even existed. [Robert Ditzler's] written statement was never provided to the [d]efense.
>
> *                 *                 *
>
> At trial, Attorney Reedy did not inquire as to how Officer M[c]Grath could have given Mr. Ditzler a copy of his statement at the preliminary hearing when there was no record of Mr. Ditzler attending the preliminary hearing. It appears from the record the police lost this evidence and [did not] adequately explain the

- 9 -

disappearance. [….] Since this evidence was solely in the possession of the Commonwealth, trial counsel should have elicited these facts at trial and requested a missing evidence [jury] instruction. Since this did not occur, [Appellant] has suffered prejudice in the proceeding. Therefore, the court should find that Attorney Reedy was ineffective and [Appellant] should be granted a new trial.

*Id.* at 18-19 (record citations omitted).

In order to show trial counsel ineffectiveness for failure to request a jury instruction, a petitioner must prove he was entitled to the instruction based on the evidence presented at trial. ***Commonwealth v. Spotz***, 18 A.3d 244, 299-300 (Pa. 2011). Pursuant to Pennsylvania Suggested Standard Criminal Jury Instruction 3.21B, "the jury is allowed to draw a common-sense inference that [an] item would have been evidence unfavorable to that party" when "there is no satisfactory explanation for [that] party's failure to produce an item," and (1) "the item is available to that party and not to the other"; (2) "it appears the item contains or shows special information material to the issue"; and (3) "the item would not be merely cumulative evidence." Pa.SSJI (Crim) § 3.21B.

Upon our review, we conclude there is no merit to Appellant's second appellate claim. At trial, Officer McGrath testified that he prepared a written statement taken from Robert Ditzler. N.T. 10/25/2018, at 166. Officer McGrath further testified that he gave the written statement to Mr. Ditzler at the preliminary hearing for his review, but Mr. Ditzler did not testify and, instead, absconded with the written statement, which has been missing ever since. *Id.* at 166-167. As such, the written statement was never adopted or

signed by Mr. Ditzler, was never proffered at trial by the Commonwealth, and was not available to any party. Hence, there was a satisfactory explanation for Officer McGrath's failure to produce it.

Moreover, Appellant does not set forth or proffer the substance of Mr. Ditzler's written statement and the record demonstrates that Mr. Ditzler never adopted the writing as an accurate reflection of his version of events. As such, we cannot decipher whether the statement revealed special information material to Appellant's case and/or would not be merely cumulative evidence.[4]

Upon review of the record, we note the following. A cashier at Lowe's testified that Appellant presented her with a credit card from Child Development, together with his photo identification card with his name on it. N.T., 10/24/2018, at 59-60. The cashier called Lowe's credit center to get the list of valid names authorized to use the card and Appellant was not on that list. *Id.* at 60. Appellant left the store without the credit card or merchandise. *Id.* at 61-62. The cashier identified Appellant at trial. *Id.* at 62. The financial director at Child Development testified that Robert Ditzler, a former maintenance worker at the organization, had been authorized to make purchases with the credit card at issue. *Id.* at 69-70. Mr. Ditzler, however, was terminated on December 6, 2016. *Id.* at 70. Appellant was never an employee of Child Development. *Id.* at 69. A loss prevention officer from Lowe's testified that he reviewed signed sales receipts and captured still

---

[4] In fact, since Mr. Ditzler did not sign or otherwise adopt the statement, the writing is nothing more than hearsay, not subject to exception.

photographs from store registers to determine there were multiple prior sales where Appellant signed Robert Ditzler's name and used the Lowe's credit card issued to Child Development. *Id.* at 110-140. When Appellant was denied the final sale, the loss prevention officer took a photograph of Appellant, using his cellular telephone, which was shown to the jury. *Id.* at 112-113. Simply put, Appellant has not explained whether or how Mr. Ditzler's written statement contained special or material information or was not merely cumulative of the other evidence presented at trial as set forth above. The evidence establishing Appellant's guilt was overwhelming; hence, we discern no prejudice in trial counsel's examination of Officer McGrath or in his failure to request a missing evidence instruction. For all the foregoing reasons, we conclude that there is no merit to Appellant's final appellate claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/28/2023

- 12 -